Phillips *vs.* Williams.

WILLIAM R. PHILLIPS, plaintiff in error, *vs.* WILLIAM T. WILLIAMS, defendant in error.

1. Under section 3183 of the Code, it is error for the Judge, in his charge to the jury, to express or *intimate* an opinion as to what has or has not been proved, and it is the duty of this Court to grant a new trial when such error is committed, whether, in its opinion, substantial justice has or has not been done by the verdict.  The statute, which is imperative and must be obeyed, denies to the Supreme Court the discretion in this matter in sustaining a verdict rendered in accordance with the justice of the case, which it has in other cases, of immaterial errors in the charge of the Judge in the Court below.

2. It is error in the Court to instruct the jury that the witness who has the *most interest* in noticing and remembering the facts about which he testifies, is to be preferred.

3. When property sold is to be delivered on payment of the purchase-money, and the vendee tenders it in compliance with the contract, the title to the property vests in the purchaser.  The rules relative to tender, in its legal sense, as applicable to a debt, do not apply to an offer to pay for goods purchased.

4. The sale in this case was a contract, to which the Scaling Ordinance of 1865 is applicable, and the parties had the right to give evidence to the jury of the kind of currency in which payment was to be made, the value of the currency *at any* time, and the value of the cotton sold at *any time*, together with the admissions and conduct of both parties to the transaction, and all the facts and circumstances connected with it; and it was the province of the jury, when the case was fairly submitted to them, to adjust the equities between the parties in accordance with the power vested in them by the Ordinance above referred to.

Confederate contract. Tender. Charge of the Court. Before Judge BIGBY. Meriwether Superior Court. August Term, 1870.

Phillips' petition against Williams averred substantially that in said county, in 1863, he bargained with Williams for thirty-two thousand pounds of ginned cotton, at twenty-six cents per pound, payable in Confederate treasury notes; that he paid $1,000 00 in such currency in cash, and agreed to give him his note for the balance, payable in such currency, and to furnish bagging and rope for packing the cotton, Williams agreeing to gin and pack the cotton, and keep it for him, and deliver it upon demand; that he furnished the rope and bagging, and gave Williams his note for such balance, $7,320 00, on the 22d of August, 1863, pursuant to said contract; that he had offered to pay his said note in 1864, in such currency, and that Williams would not deliver the cotton. By amendment there was a count in trover for said cotton, averring the conversion to have occurred on the 1st of November, 1865. The defendant plead the general issue, that Phillips had refused to comply with his part of the contract; that it was agreed that Williams should keep the cotton as security till said note was paid; that Phillips refused to pay the note, and, after due notice, Williams sold the cotton; that it brought less than was due on the note, and the note was plead as set-off.

On the trial there was no dispute as to the fact of the bargain, or of its main terms, except as hereinafter stated. The note was taken, due one day after its date, "in Confederate treasury notes, or the circulating medium of the country, when paid, for value received." Phillips testified that he

signed a paper in blank, to be filled up when Williams should find out the exact weight of the cotton, with express orders to his agent to fill it up "payable in Confederate treasury notes." The agent testified, that when he delivered the note he added the words, "or other circulating medium of the country, when paid," at the request of Williams, supposing it meant the same thing as "payable in Confederate treasury notes," and that Williams at the time told him that the note was to be paid in Confederate treasury notes. He also testified, that at that date cotton was worth twenty-five or twenty-six cents per pound, and afterwards went up to from eighty cents to one dollar per pound in such currency. Phillips and two other witnesses testified to offers to pay Williams the Confederate treasury notes at several times during the war, and to demands for the cotton made since the war, and to Williams' refusal to accept the payments, or to make the delivery. It was also shown, that since 1863 said cotton was taxed by the Confederate States as Phillips' cotton, and that Phillips paid the tax.

Williams testified, that when the trade was made, cotton was selling for forty cents per pound in Confederate currency, and that he sold on a credit at twenty-six cents per pound expressly to get the chance of a better currency, and that it was understood that it would not be paid till after the war, and that he did not agree to have it paid off in Confederate treasury notes; he said he was to hold the cotton till the note was paid, and that Phillips never made any demand for it till after the war, and then absolutely refused to pay the note in gold or greenbacks, which was then the circulating medium of the country; that he offered to deliver it to Phillips after the war, when it was worth forty-three cents per pound in United States currency, if Phillips would pay his note in said currency, but Phillips refused to do it, and then he treated the trade as repudiated, and sold the cotton for less than the face of said note; he denied all statements inconsistent with these statements. Pending Phillips' examination it became necessary to fix a date. This he did by reference to a letter received by him from his, Phillips', clerk

as to shipping the rope and bagging to Williams, and containing the account of the bagging and rope, which Williams testified was correct, and this paper was offered in evidence by Phillips' counsel, but the Court ruled it out.

Defendant's counsel offered the evidence of Williams' wife, to show what she had heard Phillips and his agents say to her husband, and him say to them, touching the demand and payment of the notes, etc. Phillips' counsel objected because she was Williams' wife, but the objection was overruled, and the evidence went to the jury.

The Court charged the jury, among other things, as is shown by the motion for new trial and the assignment of errors. The jury found for Phillips only $300 00 and costs. His counsel moved for a new trial upon the grounds that the Court erred in rejecting said letter addressed to Phillips, in allowing Mrs. Williams' evidence to go to the jury, and in charging as follows: 1st. If the contract was a contract usually called a Confederate contract, that is, a contract to be discharged in Confederate money, then plaintiff might make a tender of Confederate money, and if the defendant refused to receive it, the note would be discharged; the tender must, however, be a legal tender; it must be a tender in accordance with the terms of the contract, an unconditional tender, a continuing tender; the money must be placed in such condition that the creditor could accept it at any time, otherwise the effect of the tender is only to suspend the interest from the date of the tender. 2d. That if the contract was that the note was to be discharged in the circulating medium of the country, when paid, and that it was not to be paid until after the close of the war, then a tender in Confederate money would be no tender at all. He must have made the tender in pursuance of the agreement, and if, after the time of payment arrived, he failed to pay it, it was competent for the defendant to request plaintiff to pay the note, and take the cotton, and if the plaintiff, after the request was made for such payment, delayed or refused to make the payment within a reasonable time, the defendant would have the right to sell the cotton and pay himself. 3d. If you believe,

Phillips *vs.* Williams.

from the evidence, that the contract was made when cotton was worth from forty to forty-five cents per pound, and that defendant was to receive but twenty-six cents per pound, that would be strong evidence that the note was not to be paid in Confederate money, but in a different circulating medium. 4th. That as to credibility, that witness is to be preferred who has the most interest in noticing and remembering the facts to which he testified.

Besides these there were several grounds founded upon alleged surprise of Phillips at various points in the testimony of Williams. But these are not necessary, as this Court does not notice them. The other grounds were, that the verdict was strongly and decidedly against the weight of the evidence, etc. The new trial was refused, and error is assigned upon each of said grounds. The Judge also charged the jury, that if defendant sold the cotton to plaintiff, and accepted plaintiff's note in payment of the purchase-money as an absolute payment, then the title to the cotton vested in the plaintiff, and the defendant held the cotton afterwards as plaintiff's bailee, and defendant was bound to deliver the cotton on demand, and if he refused to deliver it, a right of action accrued to the plaintiff for the cotton. 2nd. If plaintiff demanded the cotton, it must have been an absolute demand without conditions or qualifications. These also are assigned as error.

WILLIAM DOUGHERTY, P. L. MYNATT, for plaintiff in error, said, if the sale was complete, title passed—1st Par. on C., 525–6; 4 B. & C., 948; 13th Penn. St. R., 146; 14th B. Munroe, 413; 6th Dana, 48; Ch. on C., 374, 375; Smith on C., 428, 432; 34th Ga. R., 234; if so, the charge as to effect of tender was error—Smith on C., 431 and notes; it was an offer to comply and not a tender—5th Ga. R., 171; 14th Ga. R., 135, 137; it was too uncertain a charge—15th Ga. R., 285; 21st Ga. R., 310; it was hypothetical—36th Ga. R., 86; the charge as to defendant's right to sell the cotton was wrong—Smith on C., 433; it was error to say so and so is "strong evidence"—12 Ga. R., 261; defendant's

wife was incompetent—Gr. on Ev., sec. 334; Irw. Code, sec. 3744; the charge as to conflicting witnesses was wrong—Irw. Code, sec. 3820; 1st Starkie on Ev., 518.

PEEPLES & STEWART, for defendant, replied, verdicts are not lightly set aside—11th Ga. R., 203; 21st, 261; 22d, 211; 25th, 217; 26th, 524, 560; 19th, 503; 18th, 13; 29th, 227; 29th, 365; 30th, 112; the cotton being held as collateral, defendant had a right to sell after notice—Add. on C., 263–4; 2 Tenn. R., 63; 5th John., 410; 2 H. Blackstone, 316; Smith on C., 432–3; Hilliard on S., 222.

BROWN, C. J.

One important point in controversy in this case was, whether the cotton was to be paid for in Confederate treasury notes, or whether it was to be paid for after the war, in the then currency of the country. Upon this part of the case the Court charged the jury as follows: "If you believe from the evidence that the contract was made when cotton was worth forty or forty-five cents per pound, and that defendant was to receive only twenty-six cents per pound, that would be a *strong circumstance* to show that the note was not to be paid in Confederate money." This amounts to a charge, that, if the jury believe that a particular fact is established by the evidence, a certain other fact naturally or necessarily follows, or at least it is an *intimation* by the Court of an opinion, that if the one fact is established the other is proved. We do not pretend to say that the one fact might not very naturally be taken as proved when the other has been established. But we say the Court had no right so to instruct the jury, or to intimate any such opinion. Section 3183 of the Code says: "It is error for any or either of the Judges of the Superior Courts of this State, in any case, whether civil or criminal, or in equity, during its progress, or in his charge to the jury, to express, or intimate, his opinion, as to what has or has not been proved, or as to the guilt of the accused, and should any Judge of said Court violate the provisions of this section, such violation *shall* be held by the

Supreme Court to be error, and the decision in such case reversed, and a new trial granted in the Court below, with such directions as the Supreme Court may lawfully give."

It was urged by the counsel for the defendant in error, that this Court has decided, that it will not grant a new trial for such errors in the charge of the Court below as are immaterial, when substantial justice has been done by the verdict, and that this case is embraced within that ruling. We think not. The Code is imperative, that when *this* error has been committed a new trial *shall* be granted. It matters not whether the expression or intimation of the opinion by the Judge as to what has been proved be supported by the evidence or not, or whether it was in fact injurious to the party or not, the result is the same. The only question for us to consider is, did the Judge express or intimate an opinion, as to what had or had not been proved. If so, a new trial must be granted.

2. We think the charge of the Court, that a witness who has the *most interest* in noticing and remembering the facts about which he testifies, is to have the preference, was calculated to mislead the jury, though it may have been qualified in a subsequent part of the charge. It would have been better to have instructed the jury, that as between witnesses *equally credible*, they should give the most weight to the testimony of him who has the best means of knowing the facts and the least inducement to misstate or pervert them.

3. If this had been an action of assumpsit or debt on a promissory note, the charge of the Court as to the tender might not have been objectionable. But it was an action for the non-delivery of the cotton which plaintiff claims he purchased from the defendant, which was to be delivered when paid for. If the plaintiff's theory of the case be the correct one, and we think it was, the tender amounted only to an offer on his part to comply with the terms of the purchase, and not to an offer to pay a debt which he was bound to pay independently of any act to be done by the defendant. It follows, therefore, that the portion of the charge in which the jury are instructed that it must be a "continuing tender,"

and that it must be placed in such a condition that the creditor could accept it at any time, otherwise the effect of the tender is only to abate the interest from the date of the tender, was not applicable to the case before the Court. We think this view is sustained by the decision in the case of *Biggers vs. Pace, 5 Georgia,* 175. In that case the Court says: "Was Biggers bound under the proof in this case to make what might be considered a strictly technical *tender* in order to maintain this suit? We think not. The delivery of the corn and the payment of the money, were to be done at the same time. They were concurrent conditions to be simultaneously performed. And the doctrine is, that if one party is ready and willing and offers to perform, and the other will not, the first is discharged from performance of his part and may maintain an action against the other."

In the conflict of testimony which we find in this record, we do not undertake to say what sort of currency should have been offered by Phillips, or when it should have been offered, in compliance with his part of the contract, to give him a right of action against Williams for non-compliance on his part. We only say that the title to the cotton vested in Phillips when the particular cotton sold was designated and identified as the lot embraced in the contract and when Phillips offered, if he ever did, to pay the amount agreed upon in the currency intended by the parties to the contract. We think the Court should have so instructed the jury, and left them to apply the evidence and say whether the terms of the contract had been complied with by the plaintiff. If so, the title to the cotton vested in him, otherwise it did not.

4. But in either view of this case the contract was still what we commonly call a Confederate contract. It was made during the war, and within the period of time covered by what is known as the Scaling Ordinance of the Convention of 1865, and it matters not whether the title to the cotton vested in Phillips or remained in Williams, or whether this is properly an action on the case for damages for the non-delivery of the cotton, or an action of trover for its recovery, the Ordinance still applies. In either case the parties had

the right to give in evidence to the jury the kind of currency in which the payment for the cotton was to be made, and the value of it at *any time*, and the value of the cotton *at any time*, together with all the admissions and acts of the parties, and all the other facts and circumstances connected with the whole transaction from first to last, and it was the right and duty of the jury acting under the evidence, after having the case fully and fairly submitted to them by the Court to adjust the equities, the whole equities, between these parties.

As we have laid down the rule governing the wife's testimony under the Act of 1866, in the case of *Jackson vs. Jackson,* decided at this term, we deem it unnecessary to repeat it here.

Let the judgment be reversed, and a new trial be granted.