## 58.  CENTRAL OF GEORGIA RAILWAY COMPANY v. AUGUSTA BROKERAGE COMPANY.

1. A verdict will not be set aside for an error in the admission of evidence, when the same result should have been reached had such evidence been repelled.
2. An intimation of opinion by a trial judge, that an issuable fact has been proved, requires the grant of a new trial.
3. The decision of the Supreme Court in *Central Ry. Co.* v. *Augusta Brokerage Co.*, 122 *Ga.* 646, is controlling as to the principles therein announced, and is the final law of this case. The charge of the trial judge, in several portions, being in conflict therewith, a new trial necessarily results.

Action for damages, from city court of Richmond county—Judge Eve. July 17, 1906.

Argued February 4,—Decided October 3, 1907.

*Lawton & Cunningham, J. C. C. Black,* for plaintiff in error.
*William H. Fleming,* contra.

RUSSELL, J.  After a very painstaking consideration of the record and of the very exhaustive briefs of the counsel in this case, we feel obliged to reverse the judgment of the lower court refusing a new trial  Viewing the countenance of the case as delineated by the evidence, we were inclined to the opinion that the plaintiff was entitled to the recovery awarded by the jury; for the record presented such an instance of discriminatory partiality on the part of the Central of Georgia Railway Company as, in our individual opinion, calls justly for the application of punitive and

exemplary damages; but the controlling questions of law have already been decided adversely to the contentions of the defendant in error, and that decision is the law of the case. *Central Ry. Co. v. Augusta Brokerage Company, 122 Ga. 646.* The decision in that case relieves us of great responsibility, and leaves but little for our decision. The errors complained of in the numerous grounds in the motion for new trial may be divided into three classes: (1) Exceptions taken to certain portions of the charge and refusals to charge. (2) Complaints of violation of section 4334 of the Civil Code. (3) Error in the admission of certain evidence. We shall consider these in reverse order.

In the light of the evidence adduced, were the complaint as to the admission of Mr. Daniel's evidence the only error, we would have no hesitation in ruling that the verdict of the jury was right, and that the error in the admission of testimony was immaterial.

Though the grant of a new trial because of the expression of an opinion on the part of a judge is mandatory, the exceptions taken to the charge upon this ground, with one exception, are eliminated when the charge is considered as a whole. As well argued by counsel for defendant in error, the evil to be avoided was the danger of the judge influencing the jury; and while in some portions of the charge it may at first sight appear that the judge intimated an opinion, a second reading dispels the impression, by showing that the opposite contention was immediately presented to the jury, and that they were told that they were the exclusive judges of the facts.

In the eighth ground of the motion for new trial it is insisted that the court erred in charging the jury as follows: "If you find it was wilful, they would be entitled to exemplary damages; and in considering that, you consider all the aggravating circumstances surrounding the violation of the rule and connected with and incident to it, and the intent and purpose of the parties in violating the rule, as shown by the evidence." This was error, because it assumed that the rule had been violated and that aggravating circumstances had been shown. The very able counsel for defendant in error insists that the complaint of error is not well founded, because the language used by the judge was no invasion of the province of the jury, and also because other portions of the charge clearly and distinctly left it for the jury to decide

whether there were aggravating circumstances or not. We have such high regard for the legal ability of our brother, and he has pressed the point with such earnestness, that we have only reached a decision after full investigation and mature deliberation. Under the provisions of the Civil Code, embodied in §4334, as construed by our Supreme Court, the error arising from the expression of opinion as to the evidence on the part of the trial judge can hardly be cured by subsequent proper instructions upon the same subject; and it is doubtful if the injurious effect can be removed even by explicit reference to the intimation or expression of opinion, and unequivocal and public withdrawal thereof. In *Robinson* v. *Schly,* 6 *Ga.* 525, it was said that "the books abound with authority to show, that if the instructions of the court assume or presuppose a fact proper for the decision of the jury, it is error, and a new trial will therefore be granted." And in *Headman* v. *Rose,* 63 *Ga.* 459, 466, it was held that this court has no discretion, but is bound to reverse the judgment, in case of such error. It has been held that whether the expression or intimation of an opinion was supported by the evidence or not, and whether in fact it was injurious to the party or not; and even though it was wholly unintended, and though the verdict be what it ought to be, the result is the same. *Phillips* v. *Williams,* 39 *Ga.* 603; *Bohler* v. *Owens,* 60 *Ga.* 186; *Sanders* v. *Nicolson,* 101 *Ga.* 739. In our opinion the language excepted to in the eighth ground of the motion conveys an intimation that there had been both a violation of the rule and that it was attended with circumstances of aggravation. So that, whatever may have been the charge of the court thereafter, and even though the jury may have been correctly instructed, the effect was to confuse the jury. Under such conditions it would be impossible for them to regard the instructions of the court and at the same time render an intelligent verdict. *Ga. R. Co.* v. *Hicks,* 95 *Ga.* 305. See also *Whitley* v. *State,* 38 *Ga.* 50-73; *Savannah Ry. Co.* v. *Hatcher,* 118 *Ga.* 273; *Morrison* v. *Dickey* 119 *Ga.* 698 (2), 701; *Jenkins* v. *State,* 123 *Ga.* 530, etc. We might personally agree with the reasoning of the court in Davis *v.* State, 51 Neb. 301, cited by counsel for defendant in error, or concur in counsel's argument as to a proper construction of §4334, but we are bound by the prior adjudications in this State.

33

As to the errors assigned as to the charge, regardless of our personal view, we are permitted to hold but one opinion. The constitutional amendment creating this court bound us by the decisions of the Supreme Court. This case has twice appeared in that tribunal, and the law of the case has been fully expounded by what is to us binding authority. In 122 *Ga.* 646, the essential principles which control the legal aspect of the case are decided.

The charge of the learned trial judge, in several of the extracts to which exception is taken, is diametrically opposed to the adjudication of the Supreme Court. The theory of the charge and of the decision of the Supreme Court are wholly in conflict. In the case of *Central Ry. Co.* v. *Augusta Brokerage Co.*, supra, the Supreme Court held, that; "As to issuing through bills of lading or furnishing its cars to connecting carriers, in order that shipments may be carried to ultimate destination without reloading at terminal points, a carrier may discriminate against cottonseed, provided all shippers of that commodity are treated alike." "That such discrimination is dictated by the business interests of the carrier and really affects but a single shipper, because he is the only person at a terminal point who is engaged in shipping cottonseed out of the State, can not alter the matter." The plaintiff proved the discrimination, but did not prove that any commodity was discriminated against except cottonseed. It proved that the discrimination was dictated alone by the selfish interest of the carrier; but as the evidence shows no one else who was affected save itself, the discrimination, no matter how injurious to the plaintiff, in the language of the Supreme Court, "can not alter the matter." To quote from the decision of the Supreme Court (for the evidence on both trials appears to have been practically the same), "the situation may thus be summarized: the oil-mills at Augusta depended largely, for a supply of cottonseed, upon the territory through which ran the defendant railway company's line; they delivered to it their manufactured products for shipment; so the railway company got a short haul on the raw cottonseed, and also a long haul on the reshipments made over its line of the manufactured products. It was not to the business interests of the railroad company that cottonseed grown at local stations on its Augusta and Savannah branch should be shipped to oil-mills located in South Carolina; for none of the manufactured products

could then be secured for reshipment, at a high rate, over its road; its interest dictated that the cottonseed should stop at Augusta and be manufactured into oil and by-products by the mills located at that point.   The railway company therefore determined that it would not, by voluntarily granting facilities to shippers which it was under no legal duty to afford, supply the means of diverting from its road profitable shipments which it otherwise would receive.   On the other hand, the material business interests of the brokerage company demanded that it should be granted such facilities.   It was a free lance, in open competition with the oil-mills of Augusta, in the buying of cottonseed at the lowest price possible, and all the seed purchased by it were shipped from Augusta over the Southern Railway to South Carolina mills.   To reload shipments at Augusta for the South Carolina trip was expensive; to get through bills of lading, or to secure the consent of the defendant company that its loaded cars be delivered to the Southern Railway at Augusta so that the seed might be carried to its ultimate destination without reloading, would render the business of the. brokerage company profitable, the business of the Augusta oil-mills less remunerative.   Their interests and those of the defendant railroad company were coincident; its interests and those of the brokerage company conflicted.   The railway company acted as the average business man would have done; that is all.   In declining to grant the privileges which the brokerage company wished to enjoy, the railway company merely adopted a policy which was within its legal rights as a carrier.   *State* v. *Railroad Co.,* 104 *Ga.* 437.   That the brokerage company may have been the only broker in Augusta or elsewhere affected by this policy can not alter the case.   As a shipper, it was not discriminated against, though one of the commodities it handled was, incidentally."   It appears to us that the only effective way to discriminate against a shipper is to discriminate against the things he ships; but we are nevertheless bound by the decision of the Supreme Court on the subject.

The request to charge set forth in the ninth ground of the motion should have been granted.   The railroad company denied that there was discrimination against the plaintiff by withholding from it privileges accorded to other patrons.   It was, therefore, proper for the court to have instructed the jury that the plaintiff

could not recover damages upon the ground of discrimination because of the refusal of certain privileges, unless it appeared that such privileges were granted to other patrons. The instruction complained of in the second ground of the motion for new trial is in the identical language held to be error when delivered on the former trial of this case. The remaining exceptions are fully treated in the former decision in this case (122 *Ga.* 646), and any further discussion of the principles involved would be profitless.

*Judgment reversed. Powell, J., disqualified.*