BALTIMORE & O. R. Co. and another *v.* ADAMS EXPRESS Co.

*(Circuit Court, D. Maryland.* November 20, 1884.)

1. ADAMS EXPRESS COMPANY—CITIZENSHIP—FEDERAL COURT.

The Adams Express Company is a joint-stock association formed under the laws of New York, which provide that such an association shall have nearly all the essential attributes of a corporation. *Held,* that suit against it should be brought against either the president or treasurer, and that those officers being citizens of New York, it follows that whether the association be treated as a New York corporation, or the officer sued .be treated as a *quasi* corporation sole, or as an official person designated by statute to represent the association, in any event the defendant is a citizen of New York, and the federal court has jurisdiction so far as it depends on citizenship.

2. COMMON CARRIERS—ADVANCING "ACCRUED CHARGES."

If it is shown that advancing "accrued charges" by a receiving to a tendering carrier is an established usage in the express business, and that a carrier grants this facility to certain carriers, and refuses it to another, for the purpose of making a discrimination which is necessarily prejudicial, it would seem that such a discrimination should be held unlawful. But in this case, in view of the adjudications in other circuit courts in cases between the same parties, an injunction requiring the defendant to advance accrued charges was refused.

3. COMMON CARRIER—PREPAYMENT OF EXPRESS CHARGES AND COLLECTING ACCRUED CHARGES.

Under the circumstances of discrimination shown by the affidavits in this case, *held,* that the defendant should be required to receive express matter tendered to it by complainants for further transportation, and should collect its accrued charges from the consignees, and account for the sums so collected without charge, and should be required to receive from shippers, without exacting prepayment thereon, express matter destined for complainants' lines, provided complainants tender itself ready to pay the charges thereon when transferred to it

In Equity.

Application for a preliminary injunction.

*Cowen & Cross,* for complainants.

*R. Stockett Matthews* and *I. Nevitt Steele,* for defendant.

Before BOND and MORRIS, JJ.

MORRIS, J. This bill is filed by the Baltimore & Ohio Railroad Company, a corporation of the state of Maryland, and the Baltimore & Ohio Express Company, a corporation of the state of Ohio, against the Adams Express Company, alleged in the bill to be a corporation under the laws of the state of New York, and a citizen of the state of New York. The bill alleges that the Baltimore & Ohio Railroad Company, with its railroad, and those which it controls by lease or ownership, constitutes one of the through trunk lines of the United States between the east and west, and that by an act of the Maryland legislature of 1882 it is authorized to do an express business such as is done by express companies organized for that purpose. It is alleged on behalf of the Baltimore & Ohio Express Company of Ohio that it is engaged in the express business in the west over the railroad lines

controlled by the Baltimore & Ohio Railroad Company, and, in conjunction with the Baltimore & Ohio Railroad Company, is operating the Baltimore & Ohio Express over the lines between Cincinnati, Baltimore, New York, and elsewhere. It is alleged that the Baltimore & Ohio Railroad Company, in the development and conduct of this express business, has, in connection with the Baltimore & Ohio Express Company of Ohio, expended large sums of money in the purchase of horses, wagons, and other property suitable for that use, and has established offices in St. Louis, Cincinnati, Chicago, Washington, Baltimore, Philadelphia, and New York, and many other cities, and is doing a very large and profitable business in carrying goods, money, valuables, oysters, fruits, and perishable goods. It is alleged that the Adams Express Company, the United States Express Company, the American Express Company, the Southern Express Company, and the Southern & Pacific Express Company, and Wells, Fargo & Co., in connection with complainants, do a large portion of the express business of the country, and that it is the universal custom of said companies to receive from and deliver to each other packages for points beyond their own routes, so that a package for a distant point is transferred from one express company to another as often as required to reach its destination, and that in order to facilitate dispatch, promptness, and simplicity in these transfers there has grown up a custom, which is universal, by which the receiving company pays to the tendering company all charges which have accrued for carriage to the point of tender, known as *"accrued charges,"* so that the last company, having advanced all the accrued charges, receives from the consignee and retains the whole amount of charges to the point of destination. It is alleged that experience has proved that this method of doing business is entirely safe, as the advancing company is protected by its lien on the goods and its right of recourse against the company to which the advance is made, and that in fact it very rarely happens that the consignee refuses to accept the package and pay the charges on it. It is alleged that this practice of advancing accrued charges is essential to the quick and simple transfer of express packages from one company's line to another, and that without it the express business as now conducted could not be carried on, and that any company which is denied this facility would not be able to compete in the same business with another company to which it was granted, and would find it impossible to do a general express business, and would lose its customers. It is alleged that the Adams, the United States, and the American Express Companies, with which the complainants have been doing a large business on the basis of said facility, have combined together, and have notified complainants that after the fifteenth of October, 1884, they would not advance charges on express matter transferred to them by complainants. It is alleged that this combined action of said companies is designed to cause and will cause great and irreparable injury to com-

plainants, and will be destructive to their business. It is alleged that the Adams, the United States, and the American Express Companies, although they have notified complainants of their intention to refuse to advance charges to them, will continue to afford to each other the facilities refused to complainants, with the design to further their own business in competition with complainants.

The prayer is for a preliminary injunction restraining the Adams Express Company, the defendant, from refusing to accept parcels tendered it by complainants, and from refusing to pay the advance charges thereon, according to the usage theretofore recognized and observed by said company in its dealings with complainants, and requiring defendant to afford the same business facilities to the same extent to complainants which it affords to other express companies, and for other relief. At this hearing of the motion for a preliminary injunction it is urged by defendant's counsel that the bill is defective in that the Baltimore & Ohio Railroad Company and the Baltimore & Ohio Express Company are joined as complainants without any sufficient allegation of a joint interest in the express business, which, it is alleged, is injured by defendant's action; so that it does not appear but that the injury which complainants allege they apprehend may be a distinct and separate injury to each complainant corporation, and not a joint injury. The objection is, in its nature, a demurrer to the bill. The allegation of the bill is that the Baltimore & Ohio Express Company is engaged in sending express matter over the lines of road connected with the Baltimore & Ohio Railroad Company in the west, and, in conjunction with the Baltimore & Ohio Railroad Company, operates the Baltimore & Ohio Express over the line between Cincinnati, Baltimore, New York, and elsewhere. In our opinion, this allegation may be true and yet consistent with a state of facts which would make the injury to each corporation separate and distinct. The bill, therefore, must be amended either by dismissing one of the complainants, or, if the apprehended injury be in fact a joint injury, by making the allegation to that effect sufficiently explicit.

The second objection is to the jurisdiction of the court, and is made by a plea in abatement, in which it is alleged that the Adams Express Company is not a corporation or joint-stock association, but a simple copartnership, the parties interested therein having in 1854 signed written articles still in force, and that 44 of said copartners are residents in and citizens of the state of Maryland. The conceded fact is that the Adams Express Company is a joint-stock association consisting of some 2,500 shareholders, citizens of many different states, organized under the laws of the state of New York, having a president, treasurer, and other officers, and a board of managers, and that its shares are freely dealt in on the stock market. The New York statutes applicable to such an organization may be found in 3 Rev. St. N. Y. 1875, p. 762; 2 Rev. St. N. Y. 1882, (7th Ed.) p. 1543; Code

Civil Proc. § 1919; Const. N. Y. art. 8, § 3. By one section of these statutes it is provided that the associations mentioned therein shall not have the rights or privileges of corporations, except as therein provided; but that they have the essential attributes of corporations has been declared by the courts of New York.

In *Waterbury* v. *Merchants' Union Exp. Co.* 50 Barb. 160, the supreme court said:

"By an examination of these statutes it will be found that joint-stock companies possess the following qualities or attributes of corporations: (1) They can, like corporations, sue and be sued in a single or collective name, to-wit, the name of their president or treasurer. (2) Their property or capital is represented in shares or certificates of stock, differing in no respect from shares or stock certificates of corporations. (3) The death of a member, his insolvency, or the sale or transfer of his interest, is not a dissolution of the company. (4) They have perpetual succession, or what is sometimes called the immortality of corporations. (5) They can take and hold real and personal estate in a collective capacity and in perpetual succession. Corporations have no other attributes except the technical one of a common seal."

The statute provides that such an association may sue and be sued in the name of the president or treasurer for the time being, and provides that the president and treasurer shall not be liable by reason of such suit in his own person or property, but that the suit shall affect only the joint property of the association. It is intimated by the New York court of appeals (60 N. Y. 532) that the officers who have thus by the statute legal succession are constituted a corporation in the nature of a corporation sole. Whether this view is to prevail or not, the officer sued does, by the statute, represent the association for the purpose of suit and judgment. If, as individuals, they represent the company, as a trustee represents his *cestui que trust*, then it is the citizenship of the individual sued which determines the jurisdiction of the court. This view was held by one of the courts of New York in *Bacon* v. *Dinsmore*, 42 How. Pr. 377, in which it was ruled, on the application of the Adams Express Company for removal to another state court, that the citizenship of Mr. Dinsmore, its president, determined the right of removal, and not the citizenship of any of the shareholders whom by statute he represented. In the case of *Fargo* v. *McVicker*, 55 Barb. 437, on a question of removal from a New York state court to a federal court, the New York supreme court allowed the removal, holding that such associations were governed by the same principle as to removals as corporations, and that by the New York statutes the numerous shareholders were embodied, for the purpose of suing and being sued, into a new legal personality of the name used in the action, and that in this respect they were the same as a corporate body. The case of *Adams Exp. Co.* v. *Trego*, 35 Md. 47, in which, alleging that it was a corporation of the state of New York, the Adams Express Company sought to remove a case, because of that alleged fact, to the federal court; and the case of *Rosenfield* v. *Adams Exp. Co.* 21 La.

Ann. 234, in which, in the Louisiana appellate court, it procured a reversal of a judgment against it upon the ground that it was such a corporation, and that its petition for removal to the federal court ought to have been granted; and numerous other cases brought to the attention of the court, in which it has submitted to be sued as a New York corporation,—tend to show that, in the opinion of the experienced counsel by whom it has at various times been represented, it was considered a New York corporation, and has enjoyed the important privileges of one.

Our attention has been called to the able opinion of Judge McKennan in *Dinsmore* v. *Philadelphia & R. R. Co.*, delivered October 25, 1875, but as we find that a different ruling has prevailed in other circuits, we have felt it our duty to adhere to that which seems to us best supported by reasoning, analogy, and convenience. See *Maltz* v. *American Exp. Co.* 1 Flippin, 611; S. C. 3 Cent. Law J. 784; *Fargo* v. *Railroad Co.* 6 FED. REP. 787. We think, however, that the complainants, in availing themselves of the New York statute, must pursue its terms, and must amend their bill so that the suit shall be against the president or treasurer, (neither of whom, it is conceded, are citizens of Maryland.) The Maryland statutes have made special provision for such cases by providing (section 36, art. 67, Rev. Code 1878) that process may be served upon any person, firm, partnership association, company, or corporation, transacting the business of a carrier in this state, by service on any officer or agent. We pass, then, to the consideration of the merits of the complainants' application.

It is the duty of common carriers to give equal service on equal terms, and upon reasonable compensation, to all who may apply to them, and it is the duty of the courts to enforce these obligations by appropriate remedies. The great utility and almost necessity of the practice of the receiving express company advancing to the tendering company its accrued charges on the package tendered, as the business of express carriage is now conducted over the territory of the United States, is fully shown by complainant's affidavits, and is not denied. It is also shown how smoothly and safely to all parties the business between connecting carriers proceeds under this practice, and how difficult it would be to conduct the business without it. It is to be considered, however, that the defendant is not like a railroad company, which is a *quasi* public corporation, and in some states is declared by statute to be a public highway, and which is held bound to furnish reasonable and customary facilities to its customers. The express company has had no franchise granted to it, and in the absence of statute its liability is to be determined by the rule of the common law. The advancing of accrued charges is not imposed on carriers by the common law, and the right of any one to demand that this facility be accorded to him, if such right exists, must rest on unjustifiable discrimination: he must show that in substantially similar

cases the carrier complained of grants the facility to others in like situation with himself, and refuses it to him, and that this refusal is a discrimination necessarily prejudicial to him.

The affidavits filed by complainants declare that the practice of advancing charges is universal, but respondent's affidavits assert that no such practice prevails between two companies who are competitors for business at the point from which the package starts. In reply it is suggested that although this may be so, it is only so because, by agreement and understanding between the companies complained of, they do not compete with each other, and at points where more than one of them has an office they each solicit business only for points reached by each exclusively, having in fact an understanding with each other as to the territory to be served by each. As complainants must rely upon the fact of discrimination, if for any reason that which is not granted to them is not granted to any other in like situation, then the ground for relief fails; and the exception said to exist to the practice of advancing charges seems to us a reasonable exception.

It would be unreasonable, it seems to us, to require a company which had a through express route, say from St. Louis to York, Pennsylvania, to take a parcel at Baltimore from a company which had competed with it for the business at St. Louis, and could only carry it as far as Baltimore, and to require the receiving company at Baltimore to advance and pay to its competitor its charges. In such a case the competing company would receive its pay for the carriage from St. Louis to Baltimore from the company having the through line, before that company would itself receive its pay for the same service on the parcels which it was carrying itself, destined for York. Its competitor would fare at its hands better than it would fare itself on its through business. We are of opinion, therefore, that, at what are called in Mr. Trego's affidavit "competing points," defendant cannot be required to deal with complainants otherwise than upon the same terms as it deals with others in like situation, and we are not convinced by the affidavits that it does, under such circumstances, advance charges. But looking to the nature of the express business in this country, and the established methods generally pursued in its conduct, which have been made known and explained by the affidavits of the numerous managers of great experience in the business, and some of which are matters of common knowledge, are there any circumstances under which an express company can be required to advance accrued charges to a tendering company. The settled rule is that a carrier cannot unreasonably discriminate against one customer in favor of another; it can make no distinctions which will give one employer an advantage over another. Hutch. Carr. §§ 279–303. *Stock-yard Cases*, 3 Fed. Rep. 775, and 13 Fed. Rep. 3; *Hays* v. *Pennsylvania Co.* 12 Fed. Rep. 309. Under ordinary circumstances the advancing of accrued charges to one customer and the refusal to do so for another, or demanding prepayment from one customer and not

requiring it of another, might well be held not to be an unjustifiable discrimination, but a mere matter of discretion. But is this so in a case in which the distinction is made arbitrarily, and the necessary result is to destroy the business of one customer and build up that of another? Can this possibly be consistent with that obligation of strictest impartiality to which carriers are rigidly held, and the violation of which is condemned by all courts as a disregard of their legal obligations?

It must be conceded that the general rule is that a carrier cannot be compelled to carry without prepayment, and, *a fortiori*, a carrier cannot ordinarily be compelled to advance its own money to its customers; but when, by its encouragement, a system has grown up of which advancing charges is an essential feature, and when it does advance charges for some of its customers and refuses to do so for others, and it is shown that this discrimination is necessarily fatal to the business of those to whom the facility is refused, and it is further shown that the facility imposes no risk or inconvenience upon the carrier granting it, and is an essential facility and established usage of the business, is it going too far to say that in this respect, as in others not more essential, all must be treated alike? We strongly incline to the opinion that this reasonable doctrine must prevail. It seems to us that the evils resulting from such a discrimination, if allowed, are quite as apparent and dangerous as any of those which have been held to be unlawful. In this opinion, however, we differ from at least two others of the circuit courts of the United States in which this same question between the same litigants has very recently been passed upon, and, in this condition of the litigation over this question between these parties, we shall not grant the preliminary injunction with respect to accrued charges, as prayed for. *Baltimore & O. R. Co.* v. *Adams Exp. Co.* 22 FED. REP. 32.

Aside from the question of advancing accrued charges, is there any other relief prayed for which complainants are entitled to have granted on this motion? The affidavits of defendant substantially admit that, aside from the matter of refusing to advance charges, it does, in other respects, propose to discriminate against the complainants.

It is alleged in defendant's affidavits that complainants have refused to stand to any agreement with the other companies in respect to the express rates to be charged the public, and it is alleged that the express business done by complainants is not charged by the Baltimore & Ohio Railroad Company with the usual charges made by railroad companies to express companies, and that thus, having the use of the railroad lines without charge, complainants have reduced their express charges below a fair and reasonable living rate for such service, and that, to protect themselves from this unfair competition, the three express companies mentioned in the bill have found themselves obliged to refuse to facilitate complainant's business. However well founded these alleged grievances may be, they cannot justify de-

fendant's refusal to carry goods tendered by or destined for the complainants upon reasonable and customary terms.

It is stated in the affidavit of Mr. Hoey, the defendant's vice-president, that the three companies mentioned in the bill to prevent the Baltimore & Ohio Express from seducing their clients and customers, have notified it that after the fifteenth of October, 1884, the three companies would not receive from the Baltimore & Ohio Express Company express matter, and pay the charges of the Baltimore & Ohio Express thereon, and that they would not thereafter receive express matter destined to points reached by the Baltimore & Ohio Express exclusively, until the charges of the receiving company were prepaid thereon by the shipper. He states "that said three companies have never refused, nor are they now refusing, to receive from the Baltimore & Ohio Express Company all its express matter, and to convey the same to its destination on their lines, and there to collect the charges from the consignee." Exclusive, then, of the question of advancing accrued charges, there are two classes of cases with regard to which complainants ask relief: that is to say, the cases in which express matter starts from points on the lines of complainants and is tendered to respondents for further carriage, and the cases in which express matter starts at points on the lines of respondent destined for points reached by complainants exclusively.

As to the first class of cases, while we have said that we will not by injunction require defendant to advance charges, we see no reason why defendant should not be required to collect the accrued charges with its own from the consignee, and account for them to complainant. Indeed, that would seem to be the offer contained in the language used by Mr. Hoey, the defendant's vice-president, in his affidavit. This accounting can be done in such manner and at such reasonable times as will impose the least labor and inconvenience on both parties. There can be no hardship in requiring this to be done without charge, as confessedly the ordinary course of business of this defendant, except in dealing with the complainant, is to advance the accrued charge, and make no charge for the ultimate collection.

As to the second class of cases, the affidavits sufficiently show that to require prepayment of defendant's charges from the shippers, who tender packages to respondent destined for points reached by complainants' lines exclusively, would be an oppressive discrimination, highly inconvenient to shippers, and calculated to cripple the business of complainants on their own exclusive lines. And, as to this class of cases, we think it is the duty of defendant to receive such packages without prepayment from shippers, provided complainants agree and are ready to pay respondent's charges upon such packages on their being delivered to them. The defendant cannot be required to part with possession of such packages unless its charges are paid; but if complainants are willing to advance the charges, then defendant is without justification in refusing to accept the packages without

prepayment by the shippers.    If the amendments we suggest as nec-
essary are made, we will grant an injunction to the extent and upon
the terms indicated in this opinion.

BOND, J., concurred.