COLES, SIMKINS & COMPANY *v.* THE CENTRAL RAILROAD AND BANKING COMPANY OF GEORGIA.

Where cotton was delivered to a railroad company for shipment to its own terminus and thence to another point over a connecting line of the same gauge of track, but the initial company refused to issue through bills of lading on full car-load lots, though the shippers offered to pay commission rates for doing so, and upon this refusal the shippers took local bills of lading to the terminus of the initial company and then notified its agent to deliver the cotton to the connecting line all in car-load lots, and this not being done they were compelled to haul it on drays to the warehouse of the connecting line, there was no liability on the part of the initial company for damages or the penalty prescribed in the act of 1874 as amended by the act of 1883.

(*a*) A railroad company is not compelled to make a contract to forward goods beyond its own line; though if it should make such a contract and fail to carry it out, it would be liable in damages.

The requirement of the statute that the company shall, at its terminus or any intermediate point, switch off and deliver to the connecting road having the same gauge, all cars passing over the line of the former or any portion of the same containing goods or freights consigned to any point over or beyond such connecting road, means that if the initial company receives cars from another line consigned to a point beyond its terminus, it shall deliver them to the connecting road running to that point; but there was no intention to compel one company to furnish its own cars to another without any compensation for their use.

(b) That the defendant in other instances did ship cars from its initial to its terminal point, and thence over the connecting line, does not affect the case.

November 26, 1890.

Carriers. Railroads. Contracts. Statutes. Before Judge FALLIGANT. Chatham superior court. December term, 1889.

Reported in the decision. For former report, see 82 *Ga.* 149.

GARRARD & MELDRIM, GOODYEAR & KAY and D. H. POPE, for plaintiffs.

LAWTON & CUNNINGHAM, for defendant.

SIMMONS, Justice.

The plaintiffs in error brought their action against the railroad company for damages, and alleged, in substance, that during the cotton season they purchased, at several places on the defendant's line, cotton for shipment to Brunswick *via* the Central railroad to Albany, and thence *via* the Brunswick & Western railroad to Brunswick, the Brunswick & Western being of the same width of track or gauge, and connecting with the Central at Albany; that the defendant refused to issue through bills of lading in full car-load lots for this cotton, and the plaintiffs took local bills of lading to Albany, and were compelled to dray the cotton from the Central railroad warehouse at Albany to the Brunswick & Western warehouse; that plaintiffs had offered to pay the commission rates from Americus to Albany,

etc., and from Albany to Brunswick, if the agents would give through bills of lading on full car-load lots, which the defendant refused; that after the cotton was received by the Central railroad, and bills of lading to Albany had been issued for it, plaintiffs notified the Central railroad agent at Albany that he must deliver it in the yard of the Brunswick & Western in all car-load lots. Other allegations are made in the declaration as to the negligence of the defendant in wilfully detaining the cotton at Albany, and as to shipping cotton from Macon, a competing point with the East Tennessee railroad to Brunswick. They claimed a large amount as damages, including the penalty prescribed by the statute of not less than ten per cent. nor more than twenty-five. To this declaration several demurrers were filed by the defendant, which were sustained by the court and the case dismissed.

This action was brought under the act of 1874, as incorporated in the code, §§719(q) et seq., and amended by the act of September 28th, 1883. Acts 1882–3, p. 145. The gist of the action is the refusal of the defendant to make a contract with the plaintiffs for the transportation of their cotton from the several points on the line of the defendant, over its own road and over the Brunswick & Western road to Brunswick. We do not think that either the act of 1874 or the amendatory act of 1883 applies, under the facts set out in the declaration. These acts certainly do not force or compel any railroad company in this State to make a contract to forward goods beyond its own lines; nor do we think such was the intention of the legislature. Under the common law, the carrier could only be compelled to receive goods and carry them to the end of its own line; and this statute does not add any further compulsory duty upon the railroad.

It is argued, however, that the statute requires that

all railroad companies in this State shall, at their terminus or any intermediate point, switch off and deliver to the connecting road having the same gauge all cars passing over their lines or any portion of the same, containing goods or freights consigned to any point over or beyond such connecting road (§719(q) ); and that as the defendant carried these cars over a portion of its line to the connecting line of the Brunswick & Western at Albany, it was compelled by this clause of the statute to deliver them to latter railroad, to be forwarded to Brunswick. If the defendant had made a contract of this kind with the plaintiffs, and had failed to carry it out, it would have been liable in damages; but as it steadily refused to make this sort of contract, we do not think it is liable. Nor do we think that the words above quoted compelled the defendant to deliver its own cars to the connecting line to be forwarded over that line to Brunswick, when it had steadily refused to contract so to do. · We are inclined to think that these words mean that if the railroad company receives cars from another line consigned to a point beyond its terminus, it is required to deliver them to the connecting road which runs to the point to which the cars are consigned; but it certainly was not the intention of the legislature to compel one railroad to furnish its own cars to another railroad without any compensation for their use by the other. If the contention of counsel for the plaintiffs in error is correct, a shipper at East Point on the Central railroad, which is six miles from Atlanta, the latter being the connecting point of the Central and the Georgia Pacific railroads, could load a car at East Point and consign it to Columbus, Mississippi, to be carried over the Georgia Pacific; and although the Central would haul the car only six miles, it would be compelled to deliver its own car to the Georgia Pacific to be hauled by the latter four or five hundred miles,

and would at the same time be held liable on its through bill of lading for all damages which might arise in the transportation and during the possession of the car by the Georgia Pacific. It would receive no compensation for the use of the car by the Georgia Pacific, except the carriage for six miles, and would run the risk of the loss of the car or any damage it might sustain while in the possession of the Georgia Pacific, for the latter might be insolvent. The legislature certainly never intended that the act should have this effect.

Nor does the allegation in the declaration that the defendant did ship cars through from Macon *via* Albany to Brunswick, help to sustain the contention of the plaintiffs. That, so far as appears, was a voluntary act upon its part. A corporation may voluntarily make a contract of this sort, but there is no law that we know of which compels it to make one against its wishes. And speaking for myself, I doubt very much the power of the legislature to enact a law compelling a railroad to make a contract for a through bill of lading beyond its terminus. Moreover, it appears from the allegations in this declaration that the defendant did make a contract with the plaintiffs to send their cotton to Albany, and the plaintiffs accepted that contract. They now seek to hold the defendant liable because it refused to do more than it agreed to do.

We think the trial judge was right in sustaining the demurrer and dismissing the case, and the judgment is
*Affirmed.*