## STATE OF GEORGIA *v.* WRIGHTSVILLE AND TENNILLE RAILROAD COMPANY.

There is no law which confers upon the railroad commission of this State the power to compel a railroad company to make a contract for the shipment of goods beyond the terminus of its own line or to issue a through bill of lading binding such company so to do; nor is the fact that a railroad company actually contracts for the shipment and delivery of goods beyond its own terminus to a designated point and issues bills of lading accordingly, when the same are routed over a particular one of its connecting lines, to be treated as unjustly discriminating against another connecting line because the company first mentioned refuses to issue through bills of lading for the shipment over the latter of goods consigned to the same point of destination.

Submitted February 24, — Decided June 7, 1898.

Action for penalty. Before Judge Hart. Laurens superior court. July term, 1897.

*J. M. Terrell, attorney-general,* for plaintiff.
*A. F. Daley,* for defendant.

SIMMONS, C. J. It appears from the record, that the Wrightsville & Tennille R. Co. refused to issue to some of its patrons through bills of lading beyond the terminus of its own line. Complaint of this action was made by the Augusta Southern R. Co. to the railroad commission of Georgia, and that commission cited the Wrightsville & Tennille R. Co. to appear before it to answer the complaint. After a hearing, the commission decided that the railroad company had violated rule 32 of the commission, and ordered it to issue to its patrons through bills of lading beyond the terminus of its line. After the passage of this order, another of the patrons of the Wrightsville & Tennille R. Co. applied to it for a through bill of lading from Bruton, a point on its line, to Tennille, thence over the Augusta Southern road to Augusta, and thence over one or more roads in South Carolina to Savannah, in this State. The Wrightsville & Tennille R. Co. refused to issue this bill of lading, but did issue one through to Savannah over its own line and that of the Central of Georgia Ry. Co. The railroad commission, through the attorney-general of the State, brought this action for the recovery of a

penalty of $5,000, as provided in section 2196 of the Civil Code.
The railroad company demurred to the petition, on the grounds
that it set out no cause of action; that the railroad commission
of Georgia had no right to require of defendant company the
issuing of through bills of lading to points beyond its own
terminus; and that the acts complained of related to shipments
of freight going beyond the boundaries of the State of Georgia
and through the State of South Carolina before reaching their
destination.    The court sustained the demurrer, and the State
excepted.

The point made by the pleadings is, whether the railroad
commission of Georgia has power, under the law, to compel a
railroad to issue a through bill of lading over its line and be-
yond its terminus.    We have carefully read rule 32 of the com-
mission, which is alleged to have been violated by the defendant
company, and we find that it is substantially in the language
of the act of 1874, codified in sections 2212–2214 of the Civil
Code.    If, therefore, the defendant company violated rule 32,
it also violated the law as declared in these sections of the code,
which are as follows:  "All railroad companies in this State
shall, at the terminus or any intermediate point, be required to
switch off and deliver to the connecting road having the same
gauge, in the yard of the latter, all cars passing over their lines,
or any portion of the same, containing goods or freights con-
signed, without rebate or deception, by any route, at the option
of the shipper, according to customary or published rates, to any
point over or beyond such connecting road, and any failure to
do so with reasonable diligence, according to the route by which
such goods or freights were consigned, shall be deemed and
taken as a conversion in law of such goods or freights, and
shall give a right of action to the owner or consignee, for the
value of the same, with interest, and not less than ten per cent.,
nor more than twenty-five per cent., for expenses and damages;
*provided,* that should the defendant, in any suit brought under
this section, set up as a defense, that the plaintiff has accepted
a rebate, or practiced fraud or deception touching the rate, it
shall be a complete reply to such defense if the plaintiff can
prove that defendant, or its agents, have allowed a rebate or

rebates, or practiced like fraud or deception from the same competing point against the rival line." "Where any railroad in this State joins another at any point along its line, or where two of such roads have the same terminus, either line, having the same gauge, may, at its own expense, join its tracks by proper and safe switches with the other, should such other road or company refuse to join in the work and expense." "No railroad company shall discriminate in its rates or tariff of freights in favor of any line or route connected with it as against any other line or route, nor, when a part of its own line is sought to be run in connection with any other route, shall such company discriminate against such connecting line or in favor of the balance of its own line, but shall have the same rates, and shall afford the usual and like customary facilities for interchange of freights to patrons of each and all routes or lines alike; any refusal of the same shall give a like right of action as mentioned in section 2212 of this code." Section 2212, it will be observed, simply requires railroad companies, at the terminus or any intermediate point, to switch off and deliver to the connecting road of the same gauge all cars passing over their lines which contain goods or freight consigned by any route, according to customary or published rates, to any point beyond such connecting road. Section 2213 allows one railroad company, at its own expense, to join its tracks by switch with another. It is clear that neither of these sections confers upon the railroad commission the power to compel railroad companies to issue through bills of lading. In the petition in this case, there is no complaint that the defendant railroad company refused to deliver to the Augusta So. R. Co. freight consigned to it, or to allow the Augusta So. R. Co. to join its tracks to the tracks of defendant company, or to allow the Augusta So. R. Co. to draw its cars from its own tracks to those of defendant company, or vice versa. Had any of these complaints been made, the case of *Logan & Co.* v. *Central Railroad*, 74 *Ga.* 684, relied upon by the attorney-general, would have been applicable; but that decision, in our opinion, does not apply to the facts of the case under consideration any more than it did to the facts of *Coles, Simkins & Co.* v. *Central R. Co.*, 86 *Ga.* 251. In the case of

*Logan & Co.* v. *Central Railroad,* the railroad company refused to receive freight in cars from another road and the owner of the freight was compelled to haul it in drays from one road to the other.

Proceeding now to a consideration of section 2214 of the Civil Code, it will be seen that this section prohibits one railroad company from discriminating " in its rates or tariff of freights in favor of any line or route connected with it as against any other line or route," and declares it shall have the same rates for all lines "and shall afford the usual and like customary facilities for interchange of freights to patrons of each and all routes or lines alike." In our opinion, these words do not confer upon the commission the power to compel railroad companies to make contracts. They refer to the reception of freight by one railroad from another or its delivery from one to another. It allows patrons of a railroad to designate the route over which they desire their goods to be shipped, and, if they so desire, to send them over roads connecting with the receiving road. To illustrate by the facts of this particular case: Beall seems to have preferred to ship his cotton from Bruton, on defendant's line, to Tennille, the terminus of the line, thence over the Augusta Southern to Augusta, Georgia, thence through South Carolina by connecting roads to Savannah, in this State. This clause of the act prohibited the Wrightsville & Tennille R. Co. from interfering with the execution of this preference. Under this clause, the defendant company could have been compelled to receive Beall's cotton, transport it to Tennille, and deliver it to the Augusta So. R. Co. The latter road would have been compelled to receive it and transport it to Augusta. Had Beall had a car-load of cotton and had the defendant company agreed for it to be shipped through in its car, the Augusta So. R. Co. would have been compelled to receive the car and transport it over its road. Beall did tender the two bales of cotton to the defendant company, and the latter was bound to receive it and deliver it to the connecting road. This is the meaning of the act of 1874, codified in the above-cited sections of the code, and these are the "usual and like customary facilities" to be afforded by a railroad to shippers. In this view

we are strengthened by the ruling of the Railroad Commission of Georgia in the case of Georgia Chem. Works *v.* R. & D. Railroad, 20 Rep. R. Com. of Ga. 175. It appears from the report of that case, that the Georgia Chemical Works shipped from Augusta two car-loads of fertilizers to a customer at Harmony Grove, Ga. These cars were routed over the Georgia Railroad to Athens, thence via Athens Belt Line over the Northeastern Railroad to destination. Upon their arrival at Athens, the R. & D. R., the lessees of the Athens Belt Line, the connecting road between the Georgia R. and the Northeastern R., refused to transmit the cars but sidetracked them, assigning as their reason for so doing that the Athens Belt Line was a competing road. Complaint was made to the Railroad Commission of Georgia; and Fort, Com., in his opinion said, in substance, that the commission had no jurisdiction of the matter, because it had adopted no rule providing for such a case. After quoting the various statutes upon the subject, he held that the shipper would have a right of action against the railroad company for a violation of the act of 1874, but that the public had no right, at that time, to enforce that act through the commission. He said: "The two great purposes in the commission act were: the prevention of extortion and unjust discrimination. This covers a wide field, of necessity; for it contemplates the making of just and reasonable freight and passenger rates, and the framing of suitable and just rules and regulations to prevent unjust discriminations." He then cites the fifth section of the act of 1879 (which we cite hereafter), and adds: "It will be seen that this section provides for the regulation of rates, the regulation of charges for handling and delivering freights, and for the making of rules and regulations to prevent unjust discriminations *in the transportations* of freights. The latter clause provides expressly for preventing unjust discrimination in transportations. What kind of unjust discriminations were referred to? It will be remembered that in 1874, long prior to the commission act, the legislature had sought to prevent the very kind of discrimination here complained of, and had given a right of action wherever it was practiced. It is therefore obvious that this very discrimination

was in the mind of the legislature at the time the commission act was passed, and that this section intended to confer upon the commission power to protect the public from discriminations of this character. The personal right of action was already secured. This grant of power authorized the commission to give protection to the public. It can not be said that it was the purpose of the legislature to remit parties injured by such unjust discriminations for their legal redress to the courts only. It was also intended to give the cumulative remedy of appealing to the commission, just as in case of an overcharge of freights. There the party has a complete remedy in the courts: yet the commission rightfully assume jurisdiction over these matters and compel the railroads to refund overcharges promptly to the parties. The courts give relief to the individual for the private wrong suffered; the commission should supply a remedy for the public by prescribing a just and reasonable rule on the subject. The individual can recover his damages; the public can be protected by the imposition of a penalty. In the present case, therefore, I am of the opinion that the Georgia Chemical Works must resort to the courts for redress; but I earnestly recommend the commission to make just and reasonable rules and regulations on this subject to prevent a recurrence of like wrongs in the future." A note to the opinion adds that, in consequence of the recommendation, the commission promulgated circular 208, adopting rule 32. The opinion and recommendation of Commissioner Fort show the intention of the commission in adopting this rule. It was to prevent discrimination such as was complained of by the Georgia Chemical Works, and was to fit the case of a railroad which refused to receive or deliver freight or to give to patrons the usual and customary facilities for the interchange of freights from its line to another.

We are clearly of the opinion that the act of 1874 was not intended by the legislature to compel a railroad company to make a contract against its will. Nor does the fact that this defendant railroad company had issued through bills of lading over the Central of Georgia Railway to Savannah justify the commission in deciding that it was an unjust discrimination

against the Augusta So. R. Co. to refuse to issue through bills of lading over that road. By the passage of the act of 1879, creating the railroad commission, the legislature intended to prohibit and prevent unjust discriminations in regard to freight rates and passenger tariffs. The title of that act shows that this is true: "An act to provide for the regulation of railroad freight and passenger tariffs in this State, to prevent unjust discrimination and extortion in the rates charged for transportation of passengers and freights, and to prohibit railroad companies, corporations and lessees in this State from charging other than just and reasonable rates, and to punish the same, and prescribe a mode of procedure and rules of evidence in relation thereto; and to appoint commissioners, and to prescribe their powers and duties in relation to the same." If the defendant company had issued through bills of lading to Savannah over the Central of Georgia Railway, this was on its part a voluntary act. It had the power, under its charter, to make such a contract, and it would be liable for any damages or loss occasioned to the goods shipped under such contract, whether occurring on its own road or upon its connecting line. The voluntary act of one party in making a contract is quite different from the involuntary act of the same party in making a like contract under duress or compulsion; and, as before remarked, the voluntary act of issuing a through bill of lading over the Central of Ga. Railway can not be construed into an act of discrimination against the Augusta So. R. Co., there being no complaint of any difference in the rates, any refusal to deliver freight to the connecting road or to transfer cars, or things of that sort. The law of this State being that the railroad company which issues a through bill of lading is bound for any loss or damage sustained by the goods on its own road or the connecting line, unless it makes an express contract in writing with the shipper, we can clearly perceive that this defendant company might be willing to issue a through bill of lading over one road and unwilling to issue it over another. The one road might be perfectly solvent and willing to pay for the loss or damage to the goods which might occur on its line, while the other might be insolvent and unwilling and unable

to pay for such loss or damage. The defendant company might be willing to trust its cars to the one road and not to the other. In this case, the Wrightsville & Tennille R. Co. might have been willing to give a through bill of lading over the Central of Georgia Ry. Co.'s line for the two bales of cotton, because of its confidence in the ability and willingness of the Central of Ga. Ry. Co. to pay for any damage the cotton might sustain upon its line. It might have been unwilling to issue a through bill of lading over the Augusta Southern Railroad, the connecting lines in South Carolina and on to Savannah. While it might have had confidence in the ability and solvency of the Augusta So. R. Co., it might have had no such confidence in the South Carolina railway companies. If litigation ensued in regard to the cotton, the Central of Ga. Ry. Co. or the Augusta So. R. Co. could have been sued in this State. If the damage or loss occurred in South Carolina, the litigation must have been conducted in the courts of that State. Rule 32 of the railroad commission being but a synopsis of the act of 1873, as embodied in the code, we are clear in our opinion that the refusal of the defendant company to issue a through bill of lading did not violate either the rule or the act upon which it was predicated.

It is claimed by the attorney-general, that if the commission had no power under the act of 1874 to compel a railroad company to issue a through bill of lading, it had that power under the fifth section of the act of 1879, above cited. We have seen from the title of that act, copied above, that its object was to regulate railroad rates and tariffs and to prevent unjust discriminations in the rates and charges for transportation, and to prohibit railroad companies from charging other than just and reasonable rates, to appoint commissioners and to prescribe their powers in relation *to the same.* This is the power intended to be given by that act. The fifth section of the act reads as follows : "That the commissioners appointed as hereinbefore provided shall, as provided in the next section of this act, make reasonable and just rates of freight and passenger tariffs, to be observed by all railroad companies doing business in this State on the railroads thereof; shall make reasonable and just rules and regulations, to be observed by all railroad companies doing

business in this State, as to charges at any and all points, for the necessary handling and delivering of freights; shall make such just and reasonable rules and regulations as may be necessary for preventing unjust discriminations in the transportation of freight and passengers on the railroads in this State; shall make reasonable and just rates of charges for use of railroad-cars carrying any and all kinds of freight and passengers on said railroads, no matter by whom owned or carried; and shall make just and reasonable rules and regulations, to be observed by said railroad companies on said railroads, to prevent the giving or paying of any rebate or bonus, directly or indirectly, and from misleading or deceiving the public in any manner as to the real rates charged for freight and passengers," etc. The attorney-general relies upon the words, "shall make such just and reasonable rules and regulations as may be necessary for preventing unjust discriminations in the transportation of freight and passengers." These words, read in connection with the context and with the title of the act, clearly mean that the commission should have power to prevent unjust discrimination in rates and charges and to make rules for this purpose. As we have shown above that issuing a through bill of lading over one connecting road and refusing to issue it over another is not an unjust discrimination within the meaning of the words used in the act, these words can not be construed into meaning that the commission can adopt rules compelling a railroad to issue through bills of lading over another road. This action was brought under that section of the code which allows the State to recover the penalty for a violation of the rules of the commission. It is therefore a penal action, and it is well settled that statutes allowing such actions must be strictly construed. Thus construing the acts above dealt with and the rule of the commission, it is clear that the defendant company did not violate either the acts or the rule in refusing to issue a through bill of lading over the line of the Augusta So. R. Co.

*Judgment affirmed. All the Justices concurring.*