# WADLEY SOUTHERN RAILWAY COMPANY *v.* STATE.

1. The railroad-commission act of 1907 (Acts 1907, p. 72) does not offend article 3, section 7, paragraph 8, of the constitution of Georgia on the ground that the 12th section of the act contains matter different from what is expressed in the title.

2. Section 6 of the railroad-commission act of 1907 (Civil Code (1910), § 2663) contemplates that notice and an opportunity of a hearing be given to persons, railroads, or other corporations interested in the orders issued by the commission, and that provision may be made for such notice either by statute or rule of the commission. This section is to be construed to mean that the commission shall not issue a special order in a particular case, directed to a person or corporation, without first giving notice and an opportunity for hearing to the person or corporation so to be affected thereby.

3. A State statute which confers on a railroad commission the power to require railroads to afford the usual and like customary facilities for interchange of freight to patrons of each and all routes or lines alike, and to make just and reasonable rules for preventing unjust discrimi-nations, and provides for notice and an opportunity of a hearing of the railroad company to be affected by any order of the commission, and for a violation of an order of the commission imposes a penalty on the corporation in a sum not to exceed $5,000, in the discretion of the trial

judge, and also subjects any person violating or abetting the violation of the order to punishment for a misdemeanor, does not offend the constitutional guaranties of due process of law and the equal protection of the laws, in that the railroad to be affected by the order is prevented from testing the validity of the statute or the order of the railroad commission, because of excessive penalties.

4. The Georgia railroad-commission act invests the railroad commission with power to require railroads to afford the usual and like customary facilities for interchange of freight to patrons of each and all routes or lines alike, and to make reasonable rules for preventing unjust discriminations. Under this power it is competent for the commission to declare as an unlawful discrimination a course of conduct whereby a railroad company, connecting with other railroad companies at each of its termini, which converge to a common point, affording a choice of routes from the common point to stations on its own line, receives from one of its connections freights destined to points on its own line without requiring prepayment of the earned charges of the favored carrier, and declines to receive from the connecting carrier at the other terminus freight destined to points on its own line without prepayment of the freight charges earned by that connecting carrier, where the conditions are substantially similar, and the effect of the course of conduct is to seriously curtail competition in rates and service to the patrons on its own line.

5. The action was properly authorized by the Governor.

6. The admission of irrelevant and immaterial evidence, not prejudicial to the losing party, is not cause for a new trial.

7. An exception to the refusal of the court to allow a witness to answer a stated question is insufficient where the answer expected to be elicited is not given.

8. The charge was adjusted to the law and facts, and was free from substantial error. The evidence authorized the verdict.

FEBRUARY 13, 1912.

Action for penalty. Before Judge Rawlings. Jefferson superior court. January 21, 1911.

The action is by the State of Georgia against the Wadley Southern Railway Company, to recover a penalty for disobedience to an order of the Railroad Commission of Georgia. The Central of Georgia Railway Company, a domestic corporation, owns and operates a line of railroad from Macon to Wadley and beyond. The Macon, Dublin & Savannah Railroad Company owns and operates a railroad from Macon to Rockledge. The Stillmore Air-Line Railway Company operates a railroad from Wadley to Collins, where it connects with the Seaboard Air-Line Railway. The Wadley & Mount Vernon Railroad Company operates a line of railroad from Wadley to Rockledge. In 1906 the Stillmore Air-Line Railway Company and the Wadley & Mount Vernon Railroad Company

merged into a new corporation called the Wadley Southern Railway Company, which was duly chartered under that name. The Central of Georgia Railway Company is the owner of all the stock and bonds of the Wadley Southern Railway Company. Adrian is a station on the Wadley Southern Railway Company between Wadley and Rockledge, being twenty-seven miles distant from Wadley and ten miles distant from Rockledge. On August 17, 1909, certain merchants and business men of Adrian addressed a petition to the Railroad Commission of Georgia, representing that " The Wadley Southern refuses to handle freights delivered them at Rockledge by M., D. and S., without freight charges being fully prepaid to Rockledge," and praying the interposition of the Railroad Commission in aid of interchange of freights at 'that point. A hearing was had upon this petition; and on March 16, 1910, the following order was passed by the Railroad Commission of Georgia: "In Re Refusal of the Wadley Southern Railway Company to accept freight from the Macon, Dublin and Savannah Railroad Company, at Rockledge, Georgia, without the prepayment of freight charges. . . The Commission having heard evidence and argument of counsel in the foregoing complaint as to discrimination alleged to be practiced by the Wadley Southern Railway Company as against shippers to Adrian, Georgia, over the line or route of the Macon, Dublin and Savannah Railroad Company via Rockledge, Georgia, and in favor of shippers over the line or route of the Central of Georgia Railway Company at Wadley, Georgia, and it appearing that the alleged unlawful discrimination arises out of the requirement of the Wadley Southern Railway Company that shippers shall prepay charges via Rockledge before it will receive freight at that point from the Macon, Dublin and Savannah Railroad Company for Adrian, but does not require like prepayment of charges on freight via the Central of Georgia Railway Company at Wadley, thus affording facilities to patrons of the Central of Georgia Railway Company's line or route, for the interchange of freight, denied to patrons of the Macon, Dublin and Savannah Railroad Company's line or route, and it appearing that the Macon, Dublin and Savannah Railroad Company's line or route via Rockledge is a competitor of the Central of Georgia Railway Company's route or line via Wadley for freight moving to Adrian and other points on the Wadley Southern Railway Company between Rock-

ledge and Wadley, and that the rule or requirement of the Wadley Southern Railway Company complained of is intended to afford and does afford to patrons of the Central of Georgia Railway Company facilities denied to patrons of the Macon, Dublin and Savannah Railroad Company, a connecting line of the Wadley Southern Railway Company, and a competitor of the Central of Georgia Railway Company for Adrian business, which interferes with the exercise of the freedom of choice in routes by shippers, the Commission is of the opinion that the practice complained of is, under the law of Georgia, an unlawful discrimination, and such a discrimination as the Commission is required by law to forbid. It is therefore ordered, that the Wadley Southern Railway Company at once desist from the discrimination specifically complained of in this case. Ordered further, that the Wadley Southern Railway Company, on and after the receipt of this order, afford to patrons or shippers over the line of the Macon, Dublin and Savannah Railroad Company via Rockledge the same facilities for the interchange of freight afforded to patrons or shippers over the line of the Central of Georgia Railway Company via Wadley." Notice of this order was duly communicated to the general freight agent of the Wadley Southern Railway Company, and its attorneys replied that they had advised that company that "the order of the railroad commission is not legal, and that the railroad company is not legally bound to observe it." Whereupon his Excellency, the Governor, passed the following order: "In Re Wadley Southern Railway Company. Refusal to accept at Rockledge, Georgia, freight from the Macon, Dublin and Savannah Railroad Company, unless freight charges are prepaid. Whereas, the Railroad Commission of Georgia having notified me that the Wadley Southern Railway Company has refused to obey the order of said Commission directing that said Railway Company should receive freight from the Macon, Dublin and Savannah Railroad Company without requiring prepayment of freight charges, which refusal it is claimed by such Commission is an unauthorized and illegal discrimination under the facts, and subjecting the said Company to a penalty for a violation of the Commission's orders. It is therefore ordered, in conformity with the act approved August 23rd, 1907, that suit be instituted by the Special Attorney of the Railroad Commission in the name of the State of Georgia for the recovery of such penalty." In pursuance

of this order a petition was filed in the name of the State to recover of the Wadley Southern Railway Company $5,000 penalty as provided by the act approved August 23rd, 1907. The petition contained two counts. The first alleges that the railway company has failed and refused to obey, observe, and comply with the order of the Commission, whereby the company became indebted to the State of Georgia in a sum not to exceed $5,000. The second count alleges, that, since July 6, 1909, the Wadley Southern Railway Company has refused and still refuses to receive freight from the Macon, Dublin and Savannah Railroad Company at Rockledge, Georgia, for points on its line, without prepayment of the freight, while during all this period the company has received and still receives from the Central of Georgia Railway Company at Wadley, Georgia, freights shipped from Macon, Georgia, and other points along its line of railroad without prepayment of the freight, and in this way the Wadley Southern Railway Company has discriminated against the M., D. & S. Railroad Company, one of its connecting lines, in favor of the Central of Georgia Railway Company, another of its connecting lines, and thus fails and refuses to afford the usual and customary facilities for the interchange of freight to the patrons of each of said routes and lines alike, contrary to the provision of the statute in such cases made and provided. The Wadley Southern filed its answer, denying its liability under either count, and attacked the constitutionality of the law providing for the penalty. A trial was had, and a verdict was returned finding the railway company subject to the penalty. A new trial was refused, and a bill of exceptions was sued out, complaining of the judgment refusing a new trial and various interlocutory rulings.

*Lawton & Cunningham*, for plaintiff in error.

*James K. Hines*, contra.

EVANS, P. J. 1. We will first consider whether the railroad-commission act of 1907 (Acts 1907, p. 72) contains any of the constitutional infirmities urged against it. The title is "An act to increase the membership of the Railroad Commission of Georgia . . . to prescribe and fix penalties and punishments for failure and refusal to obey any order, rule, or regulation of the Railroad Commission; to prescribe the form of procedure for enforcing the same; and for other purposes." The 12th section (Civil Code (1910), § 2667) provides that "any common carrier . . .

which shall violate any provision of this act or the acts heretofore passed, or which fails, omits, or neglects to obey, observe, or comply with any order, direction, or requirement of the commission . . . shall forfeit to the State of Georgia a sum not more than five thousand dollars for each and every offense, the amount to be fixed by the presiding judge." It is contended that article 3, section 7, paragraph 8, of the constitution of Georgia, to the effect that no law shall pass which contains matter different from what is expressed in the title, has been violated by the inclusion in the 12th section of matter not referred to in the title, in so far as it undertakes to give to the State a right of action for a violation of "any provision of this act or the acts heretofore passed," whereas the title refers only to penalties for the "failure and refusal to obey any order, rule, or regulation of the Railroad Commission." The general scope of this legislation was to retain to the railroad commission the power and authority heretofore conferred upon it by law, except as changed by the act, and to confer additional powers upon the commission, with the view that the commission should be vested with a general supervision over public-service corporations, with power to require them to establish and maintain such public service and facilities as may be reasonable and just. Some of the rules for the regulation of railroads which were designed to be enforced by the commission were in the form of statutes, but they were nevertheless binding on the commission, and all parties to be affected, as rules; just as much so as if such rules had been promulgated by the commission. It was competent for the legislature to deal with these statutory provisions as rules prescribed for the commission to enforce; and the act did not offend the constitutional provision as contended. *Richardson* v. *Macon,* 132 *Ga.* 122 (63 S. E. 790).

2. It is said that the statutes giving validity to the order of the railroad commission, which is the basis of this suit, do not provide for notice and hearing, nor do the rules of the commission so provide, and therefore due process of law is not afforded. The commission act of 1907 enlarged the powers of the railroad commission so as to give it jurisdiction and power over practically all public-service corporations. In defining the jurisdiction the sixth section of the act (Civil Code (1910), § 2663) declares that the railroad commission shall have and exercise all power and authority here-

tofore conferred on it by law, and shall have general supervision over railroads and other public-service corporations. In the exercise of its powers, it was provided that it may proceed on its own initiative or on the complaints of others, and may require all common carriers and other public-service companies under its supervision to establish and maintain such public service and facilities as may be reasonable and just, either by general rules or by special orders in particular cases, "provided that nothing in this section shall be so construed as to repeal or abrogate any existing law or rule of the commission as to notice or hearings to persons, railroads, or other corporations interested in their rates, orders, rules, or regulations issued by said commission before the same are issued, nor to repeal the law of this State as to notice by publication of a change in rates." The most casual reader of this section can not fail to be impressed that the legislative purpose was to afford parties affected by any order in a particular case an opportunity to be heard in advance of its promulgation by the commission. While the literal application of the proviso concerns the preservation of existing statutes, and orders of the commission, with respect to notice and hearings, yet the implication is so pregnant of the legislative conception that such specific orders of the commission must be made only after notice and hearing, that it would be doing violence to the legislative plan of supervision by the commission to construe the act so as to impute a contrary purpose and intent. It was contemplated that provision for notice should be made by statute or rule of the commission. Special statutory provision was made as to notice of a hearing for joint rates to roads that are not under the management of the same company, and as to the requirement about the location of depots (Civil Code (1910), § 2631), but as to other matters the legislature left it to the commission to formulate rules respecting notice and hearing. Although the reference in the clause relating to notice was to the preservation of existing statutes and rules of the commission, there is no negation that the commission might not from time to time amend or enlarge its rules so as to give other or additional notice. There is nothing in the present record contradicting the existence of a rule of the commission providing for notice at the time of the passage of the act of 1907, nor is there any contention that the Wadley Southern Railway Company did not in fact have notice

of the hearing in the particular case.  The defendant pleaded that
the law did not provide for a hearing on the facts, and that for
.this reason it violated the constitutional guaranties of due process
of law, and the equal protection of the laws.  The burden was on
the railroad company to sustain its plea by submitting proof of
the absence of any rule of the commission providing for notice and
a hearing, Civil Code, § 2626.  It wholly failed in this particular,
and we are bound to assume that there was a rule of the commis-
sion as contemplated in the statute.

With regard to the complaint in the plea that the act made no
·provision for an appeal, it has been settled by the Supreme Court
of the United States that due process of law, as guaranteed by the
14th amendment, does not require that an appeal shall be provided
for a party who has had one hearing before a competent tribunal,
with full notice as to the time and place of hearing.  Mich. C. R.
·R. Co. v. Powers, 201 U. S. 301, 302 (26 Sup. Ct. 459, 50 L. ed.
744)·.

It will be observed that the point raised in the plea is the non-
existence of any rule of the commission, and not any deficiency of
,the rule.  As the defendant failed to show the non-existence of
any rule of the commission, or, if there was a rule, that it was
.faulty in any respect, the latter question can not arise in this case.

· 3.  ·It is urged that the provisions of the act of 1·907 (Civil
Code (1910), §§ 2667, 2668) prescribing penalties are unconstitu-
tional as being a denial of due process of law and the equal pro-
tection of the laws, as guaranteed by the constitutions of the State
of Georgia and of the United States, because of their excessive pen-
alties.  The first of these sections subjects a public-service corpora-
tion to a penalty not to exceed $5,000 for each and every violation
of any provision of that section, or of acts heretofore passed, or
of any order of the commission, the amount of the penalty to be
fixed by the presiding judge.  The latter section declares that every
officer, agent, or employee of the corporation, violating or abet-
ting the violation of any statute or of any order of the commission,
shall be guilty of a misdemeanor.  The general policy of the act
of 1907, as well as of the previous acts pertaining to the regulation
of railroads,_ etc., is to devolve upon the railroad commission the
duty of formulating rules and regulations, rather than to do so by
direct enactment.  The legislature has not undertaken by statute

to establish either passenger or freight rates, but has referred the ascertainment of just and reasonable rates to the railroad commission.

The penal feature is the force of the law; and to deny the right of the legislature to impose appropriate penalties for violations of orders of the commission, which the commission is authorized to issue after due notice to the corporation to be affected, and on the fullest investigation, would in effect be a denial of the power of the State to regulate public-service corporations by commission or other administrative agency. The power of the legislature to create a commission to regulate public-service corporations, and to prevent unjust discriminations by them, is too well established in the jurisprudence of this State to be contested at this late day. *Georgia R. v. Smith,* 70 *Ga.* 694. The distinction is obvious between a case where the statute imposes a penalty for disobedience to an order of the commission, made after notice and an/opportunity to be heard, and the case of a statute which imposes serious and heavy penalties for its violation, where the validity of the statute depends upon the existence of facts and their effect, which can only be determined after an investigation of a most complicated and technical character. An illustration of the latter case may be found in. Ex parte Young, 209 U. S. 123 (28 S. E. 441, 52 L. ed. 714). In that case the legislature of the State of Minnesota enacted a statute fixing passenger tariffs and commodity rates for railroads, much lower than existing schedules, and subjected the carrier, its agents, and employees to serious and heavy penalties for each violation of the statute; and it was held that the statute was unconstitutional, because the penalties for its violation were so enormous that persons affected thereby were prevented from resorting to the courts for the purpose of showing that the tariff schedules provided in the statute would yield so little revenue that their observance would practically confiscate the carrier's property. It will hardly be doubted that a State may impose such penalties as will tend to compel obedience to its mandates. If the penalties are imposed for the violation of an order passed after notice and an opportunity for a hearing, it can not be said that the parties affected have been denied due process of law or the equal protection of the laws.

4. The point is made that the order of the commission is null

and void, because it is neither just nor reasonable, in that it undertakes to exact of the defendant unreasonable and unlawful requirements. It is therefore important to ascertain exactly upon what state of facts the order was intended to operate; and in reaching a conclusion upon the matter it is proper to consider the application of the merchants of Adrian in connection with the order of the commission thereon. These merchants represented to the commission that the Wadley Southern Railway Company refused to handle freights delivered to that company at Rockledge by the Macon, Dublin & Savannah Railroad Company, without freight charges being fully prepaid to Rockledge; and the commission's order recited that after investigation the commission found that the alleged unlawful discrimination arose out of the requirement of the Wadley Southern Railway Company that shippers shall prepay charges via Rockledge, before it will receive freight at that point from the Macon, Dublin & Savannah Railroad Company for Adrian, with no requirement of like prepayment of charges on freight via the Central of Georgia Railway Company at Wadley, thus affording facilities to patrons of the Central of Georgia Railway Company's line or route, for the interchange of freight, denied to patrons of the Macon, Dublin & Savannah Railroad Company's line or route; that the Macon, Dublin & Savannah Railroad Company's line or route via Rockledge is a competitor of the Central of Georgia Railway Company's route or line via Wadley for freight moving to Adrian and other points on the Wadley Southern Railway between Rockledge and Wadley; that the requirement of the Wadley Southern Railway Company complained of is intended to afford, and does afford, to patrons of the Central of Georgia Railway Company facilities denied to patrons of the Macon, Dublin & Savannah Railroad Company, a connecting line of the Wadley Southern Railway Company for Adrian business, which interferes with the exercise of the freedom of choice in routes by shippers; and that the practice complained of is an unlawful discrimination, and such as the commission is required by law to forbid. From these findings of fact it is clearly apparent that the act condemned as an unlawful discrimination was the practice of the Wadley Southern Railway Company to receive from the Central of Georgia Railway Company at Wadley, one of its termini, shipments of freight destined to Adrian, without prepayment

of freight, and to refuse to receive shipments of freight destined to Adrian from the Macon, Dublin & Savannah Railroad Company at Rockledge, its other terminus, unless the charges were prepaid. The order prohibited the defendant from declining freight shipped over the Macon, Dublin & Savannah Railroad to Adrian, with freight charges to be paid and collected at points of destination, or furnishing different facilities in this matter to the Central of Georgia Railway Company.

Given this construction, does the order exact of the defendant an unreasonable and unlawful requirement? In the original act establishing the railroad commission it was enacted that the commission shall make just and reasonable rules and regulations as may be necessary for preventing unjust discriminations in the transportation of freight and passengers on the railroads of this State. Civil Code, § 2630. The supplementary act of 1907 clothes the commission with power and authority "to require all common carriers and other public-service companies under their supervision to establish and maintain such public service and facilities as may be reasonable and just, either by general rules or by special orders in particular cases." Civil Code, § 2663. The contention is that even under these broad powers it is not competent for the commission to pass the order complained of. It is argued that the commission is not vested with power to force the defendant into contractual relations with other lines, or to prevent it from selecting those with whom it shall deal on preferential terms or terms of mutual confidence and trust. It is true that railroad companies can not be required to issue through bills of lading, or to contract to forward goods beyond their own lines. *Coles* v. *Central R. Co.,* 86 *Ga.* 251 (12 S. E. 749) ; *State* v. *W. & T. R. Co.,* 104 *Ga.* 437 (30 S. E. 891). Neither the purpose nor the effect of this order is to require the defendant to issue a through bill of lading beyond its own line. Nor is its purpose and effect to require any independent contractual relation between the defendant and another carrier. Though the collection of the entire freight charge at destination implies an obligation to account for the connecting carriers' share of it, nevertheless this is but one incident of a course of business voluntarily adopted by the carrier, whereby facilities respecting the interchange of freight are afforded to one connecting carrier, and denied to another connecting carrier, in contravention of the

statute against unjust discrimination. The imperative quality of the order is to prohibit the defendant from favoring one carrier to the injury of another, and of the public, where conditions as to the service are substantially alike in both cases. It is to prevent a · discrimination which practically deprives the merchants of Adrian of any competition in rates and service, because of the defendant's favoritism to the carrier on one end of the line, and the refusal of the same privileges to the carrier at the other end of the line. Where conditions are substantially the same, the denial by a carrier to one of its connections of the same facilities for the interchange of freight accorded to another connecting carrier, which practically deprives points on its line of the opportunity of competition in service and rates, is an unjust discrimination. A., T. & S. R. *v.* D. & N. O. R., 110 U. S. 667 (4 Sup. Ct. 185, 28 L. ed. 291) ; B. & Q. R. Co. *v.* Adams Ex. Co., 22 Fed. 404; Ala. & V. Ry. Co. *v.* Miss. R. Com., 203 U. S. 496 (27 Sup. Ct. 163, 51 L. ed. 289) ; Diamond Mills Co. *v.* B. & M. R. Co., 9 I. C. C. R. 311. And it is within the power of the commission to make rules and regulations for preventing unjust discriminations in the transportation of freight. *Augusta Brokerage Co.* v. *Central Ry. Co., 121 Ga.* 48 (48 S. E. 714).

A case much in point is that of *Logan* v. *Central R., 74 Ga.* 684. The Central Railroad Company operated a road from Savannah to Macon, with branches to other points in the State. It adopted a rule that no shipments of salt or other merchandise from Brunswick in competition with Savannah would be received from local stations on its line, unless charges were prepaid and shipments delivered by drays as local business. There was another railroad from Brunswick to the interior of the State, from which the Central Railroad refused to receive merchandise unless charges were prepaid and goods delivered in drays. This court held the rule of the railroad to be in the very teeth of the act of 1874 (Civil Code, § 2657), in that it did not "afford the usual and like customary facilities for interchange of freights to patrons of each and all routes or lines alike." And this court also held in *Macon, Dublin & Savannah Railroad Co.* v. *Graham, 117 Ga. 555* (43 S. E. 1000), that "a common carrier can not, in this State, lawfully discriminate against one of two or more connecting carriers as to facilities afforded or the charges made touching an interchange of freight."

It is contended that section 2657 does not require the affording of facilities of the character required by this order of the commission, but that its requirement is only applicable to physical connections and physical appliances. We do not think the section should be so restricted in its application. It applies to every facility necessary for the safety and convenience of passengers and for the prompt transportation of freight. Besides, the more recent act of 1907 (Civil Code, § 2630) confers on the railroad commission the power to require all railroads to maintain such public service and facilities as may be reasonable and just. It does not require argument to prove that a preferential discrimination by a carrier in favor of one of its connections, which has the effect to stifle competition to points on its own line, because the same facilities are not extended to another of its connections under substantially the same conditions, is neither just nor reasonable. At common law common carriers were allowed to discriminate in favor of some of their patrons, so long as the bestowal of favors did not violate their duty to the public. *Ocean Steamship Co.* v. *Savannah Supply Co.*, 131 *Ga.* 834 (63 S. E. 577, 20 L. R. A. (N. S.) 867, 127 Am. St. R. 265). But railroad companies of the present day are not only common carriers charged with the performance of their common-law duties as such, but they are also quasi public institutions, and in this relation owe additional duties to the public and are subject to governmental regulation. Certainly a regulation is just and reasonable which requires, not that a carrier shall enter into a specific contract with a connection, but, if it voluntarily extends facilities and privileges to one of its connections, that it must also, under substantially the same conditions, give the same facilities and privileges to the other connections, where the result of its favoritism is the injury of its patrons at intermediate points on its own line.

5. The suit was for a violation of the order of the commission. That order was based on the acts of 1874 and 1907, as has already been pointed out. A suit for a penalty for disobedience to the order of the railroad commission must be brought in the name of the State by direction of the Governor. Civil Code, § 2667. As the order of the commission is based on the violation of the acts of 1874 and 1907, the violation of the commission's order is likewise a violation of the statute. The Governor ordered a suit to be instituted in the name of the State for the violation of the com-

mission's order; and even if the second count was necessary, no demurrer to it was interposed, and it is not made to appear that any evidence was received but what was admissible under the first count.

6.  Objection was made to certain evidence as being irrelevant and immaterial.  Granting that the objection should have been sustained, this is not cause for a new trial, where the evidence was not of such character as to prejudice the defendant.

7.  Exception is also taken to the refusal of the court to permit a witness to answer a certain question.  But as the expected answer is not set out, the assignment of error is insufficient.

8.  The court's charge was in substantial accord with the principles of law herein enunciated, and sufficiently comprehensive to cover the real issues in the case; and the evidence authorized the verdict..

*Judgment affirmed.  All the Justices concur, except Hill, J., not presiding.*