## JONES v. LOUISVILLE & NASHVILLE RAILROAD CO. *et al.*

When in a suit against a railroad company, embraced within the scope of section 2299 of the Civil Code, to recover the statutory penalty for a violation of the provisions of that section, the plaintiff alleges that he offered to purchase from the defendant company a ticket for passage over the line of a connecting carrier and the defendant refused to sell him such a ticket, but neither alleges that the defendant had been furnished tickets of this kind for sale by such connecting carrier, nor that it had been tendered such tickets for sale and had refused to put them on sale, no cause of action is stated.

Argued June 16, 1908.—Decided February 10, 1909.

Action for penalty. Before Judge Brand. Clarke superior court. November 14, 1907.

Henry P. Jones, a minor, by next friend, brought an action against the Louisville and Nashville Railroad Company and the Atlantic Coast Line Railroad Company, to recover the statutory

penalty for a refusal by the defendants to sell a ticket of a connecting railroad company. The defendants filed a general demurrer to the petition, and, at the trial term, filed a motion, in the nature of a general demurrer, to dismiss the same. Both the demurrer and the motion to dismiss were sustained; to which rulings the plaintiff excepted. The substance of the petition now material was: Defendants, as lessees of the Georgia Railroad and Banking Company, operated a line of railroad, doing a regular passenger business, from Athens to Augusta, which connected with the Central of Georgia Railway Company's line running from Augusta to Waynesboro. Plaintiff applied at defendants' ticket office in Athens and there offered to buy a ticket "from Athens via Augusta to Waynesboro over the said lines of the Georgia Railroad & Banking Co., operated and used by" defendants, "to Augusta and thence to Waynesboro over the said line . . owned by the Central of Georgia Railway Co., and which is a connecting line." Defendants refused to sell plaintiff a ticket "over the connecting line to Waynesboro," and would sell him a ticket only over the line they operated from Athens to Augusta, at which latter place he had to purchase a ticket from thence to Waynesboro over the line of the Central of Georgia Railway Company. Such refusal was alleged to be a violation of the provisions of sections 2299, 2300, and 2301 of the Civil Code.

*Joseph L. Hull,* for plaintiff. *Joseph B. & Bryan Cumming* and *Cobb & Erwin,* for defendants.

FISH, C. J. This suit was brought under the statute embraced in sections 2299, 2300, and 2301 of the Civil Code. These sections are as follows: §2299. No railroad company having an office or agency within the State of Georgia shall refuse to put on sale, or refuse to sell, any ticket of any other railroad company, with which the same may be directly or indirectly connected, at the price or rate fixed by the railroad commission of this State, for passage over lines of such connecting roads, less such amount as may be directed to be deducted from such rate by any one or more of said connecting lines; and it shall be unlawful, after the sale of such ticket, to refuse to issue checks for baggage over such connecting lines, to the extent that the baggage may be allowed to be checked under the ordinary rules and regulations of such companies. §2300. No railroad company operating or doing business wholly

or partly within this State shall refuse to put on sale with the agents of any other railroad company, wherewith it may be directly or indirectly connected, tickets for any point upon its lines of road, or refuse to receive such tickets for passage over its lines, or refuse to receive and transport baggage which may be checked upon said ticket so sold. Any company, so placing its tickets upon sale, may demand reasonable security, to secure the price of such tickets so placed on sale, and may demand, from time to time, such renewals of deposits, or other security, as will protect it from any loss from the sale of such tickets. §2301. For every violation of any of the provisions of the two preceding sections, the railroad company shall be subject to a penalty of one thousand dollars, which may be recovered in any superior or city court of the county in which such violation may occur. Suit may be brought by the railroad company whose road may be discriminated against, or by the person offering to buy a ticket over such road; and such penalty may be recovered by each of said parties, and the recovery by one shall not be a bar to recovery by the other." A case in which the facts were substantially the same as those in this, and in which the same legal questions were presented, was quite recently before the Court of Appeals. *Wimberly* v. *Georgia Southern & Florida Railway Co., 5 Ga. App.* 262 (63 S. E. 29). That court construed the above-quoted sections of the Civil Code in the light of the title of the original act of October 15, 1891 (Acts 1891, p. 155), the provisions of which have been transferred, almost literally, to these code sections. The title of that act was, "An act to further carry into effect paragraph 1 of section 2 of article 4 of the constitution of the State, and to prevent unjust discrimination upon the part of any railroad operated within or partly within this State against any other railroad company within this State." From this title and the language of the statute itself, the court was of opinion that the sole purpose of the act "was to prevent discrimination on the part of one railroad against another railroad connecting therewith," and that "No liability for the penalty provided by section 2301 . . attaches to a refusal" by one railroad company to sell the tickets of another company operating a connecting line, when the company operating such connecting line does not desire its tickets to be sold by the first-mentioned company, or has not expressed a desire that tickets to stations on its.

line should be so sold. Hence the court held, that "While any person who offers to buy from any railroad company a ticket to a station on the line of a connecting railroad company, and who is refused such ticket after tender of the purchase-price thereof, provided such railroad is not authorized to refuse, may maintain an action for the penalty provided by law," yet, in such an action, "it must be alleged and proved, not only that [the defendant railroad company] refused to sell tickets to a station or stations on a connecting line, but also that tickets to such stations had been tendered it by such connecting line to be sold for it, and that defendant company had refused to place such tickets of its connecting line on sale." Accordingly the court affirmed the judgment of the trial court, sustaining a general demurrer to the plaintiff's petition. There, as here, one of the contentions in support of the general demurrer was, that the petition failed to set forth a cause of action, for the reason that the statute upon which it was based is violative of provisions found in the constitution of this State and of provisions contained in the constitution of the United States. But the court, being of opinion that even if the statute should be held to be constitutional the petition was fatally defective, in that it failed to allege the facts necessary to constitute a cause of action under the statute, held that a decision upon the question of the constitutionality of the act—over which question it had no jurisdiction—was not necessary in order to determine whether the trial court erred in dismissing the petition upon general demurrer, thus recognizing the well-settled rule that the question of the constitutionality of a statute is only to be entertained by a court when the determination of such question is necessary in the case under consideration. In the opinion of the court, delivered by Russell, J., it is said: "If the defendant company violated the provisions of section 2299, the plaintiff is entitled, under the terms of section 2301 of the Civil Code of 1895, to maintain an action for the penalty of $1,000; because by the express terms of the latter section either a railroad company whose road is discriminated against, or a person offering to buy a ticket, or both, may recover against a railroad which refuses to sell tickets of a connecting line. We are clear, however, in the opinion that the sole purpose of section 2299 was to prevent one railroad from discriminating against a connecting railroad, and equally clear that

this was the only object in legislative contemplation at the time of the passage of the act of 1891 (Acts 1891, p. 155), from which sections 2299 and 2301 are codified. The legislature had, previously to this enactment, provided for protection in behalf of passengers and their baggage against discriminations, and this act does not attempt to amplify the previous legislation, so far as prospective passengers or patrons of the road are concerned. Having dealt with the subject of discriminations against the traveling public and shippers of freight in the acts of 1874, 1879, and 1889 (Civil Code, 1895, §§2188, 2214, 2307), the legislature, by the act of 1891, turned its attention to the prevention of discriminations on the part of one railroad company against other (perhaps weaker) railroad companies, and sought to provide a penalty which would preclude such discriminations." The court then proceeds to show from the title of the original act that this was the sole purpose of the General Assembly in passing the act of 1891, and that the rights of passengers who might be affected were evidently considered to be merely incidental to this purpose. We agree with the Court of Appeals in its construction of these code sections, and we think that such is the proper construction of the same, whether they are construed simply as they stand in the code, or are considered in the light of the title of the original act from which they were codified. The provisions of the statute as codified are the same as those contained in the original act; and hence it is clear that there was no purpose on the part of the codifiers, or of the General Assembly which adopted the Code of 1895, to change the law as it existed before the codification. The title of the original act could, therefore, be resorted to in order to properly construe the code sections in question, if ambiguous. 11 Michie's Enc. Dig. Ga. Rep. 843. But, as we have said, we think that these sections of the Civil Code, even without reference to the title of the act from which they were taken, clearly bear the construction which was placed upon them by the Court of Appeals. The language, "shall refuse to put on sale, or refuse to sell, any ticket of any other railroad company," etc., which occurs in section 2299, clearly indicates the purpose to deal with railroad companies, coming within the purview of the statute, in their relations to each other, and not in their relations to prospective passengers, the rights or convenience of passengers being merely incidental to

the main purpose of the legislation. A refusal implies an antecedent request, and a refusal by a railroad company to put on sale the tickets of another company implies that the company so refusing has been requested to put such tickets on sale. It is obvious that, in order for this provision of the statute to be violated by the refusal of a railroad company to put the tickets of another company, operating a connecting line, on sale, the request to put the tickets on sale must come from the company over whose line the tickets are intended to be used; for it alone has the right and power to issue such tickets and to sell, or authorize the sale of, the same. Of what avail would it be for any one having no right or authority to furnish such tickets for sale to make such a request? It seems that if the plaintiff, in the present case, had alleged that he had requested the defendant companies to place the tickets of the Central of Georgia Railway Company, for passage over its line from Augusta to Waynesboro, on sale, and the defendants had refused to do so, he would not have stated a cause of action; for he would not have shown any authority on his part to make the request, or to furnish the tickets for sale. The words, "or refuse to sell," occurring in the connection in which they do, also evidently refer to a refusal by one railroad company of the request of another. They were doubtless inserted after the words, "shall refuse to put on sale," because there are at least two ways in which, within the meaning of the statute, a railroad company may refuse the request of a connecting carrier to sell its tickets. It may refuse such request at the time it is made, by declining to accept the tickets and put them on sale, or it may, after accepting them and even placing them on sale, refuse to sell them to persons offering to purchase the same, thus indirectly, but just as effectually, refusing to comply with the request of the connecting carrier to sell its tickets. So, the words "or refuse to sell" were used after the words "shall refuse to put on sale," out of abundance of caution, lest after the tickets have been accepted for sale, and even actually put on sale, they should be withdrawn from sale, by a refusal to further sell them, or the company accepting them for sale should attempt to play fast and loose with the statute, by sometimes selling the tickets and at other times refusing to sell them, that is, by sometimes complying with the request of the connecting carrier and at other times refusing to do so.

The purpose of the statute to deal with railroad companies which come within the scope of its provisions in their relations to each other, rather than in their relations to prospective passengers, is further shown by the provision of section 2300, that "no railroad company operating or doing business wholly or partly within this State shall refuse to put on sale, with the agents of any other railroad company wherewith it may be directly or indirectly connected, tickets for any point on its lines of road, or refuse to receive such tickets for passage over its lines." Here the words, "shall refuse to put on sale with the agents of any other railroad company," etc., clearly imply the denial of a request by such other railroad company that the tickets referred to shall be put on sale with its agents. This purpose of the statute also appears in the provision in this section, that any company placing its tickets on sale with another company may demand reasonable security for the price of such tickets, the right of the company issuing the tickets to demand such security before allowing the company desiring to sell them to do so clearly implying that the question of the sale by one company of the tickets of the other is one to be settled between the companies themselves, in accordance with the provisions of the statute, and not a matter to be determined merely upon the application of a prospective passenger to one of such companies for a ticket for passage over the line of the other company. In this section the words, "or refuse to receive such tickets for passage over its lines," are similar in purpose to the words, "or refuse to sell," which are contained in the preceding section, the object in the one case being to prevent a railroad company which has ostensibly complied with the statute by placing its tickets on sale with the agents of a connecting carrier from afterwards seeking to circumvent the law by refusing to receive such tickets for passage over its lines when they have been sold by the connecting carrier, and the object in the other case being to prevent a company which has put the tickets of a connecting carrier on sale from afterwards refusing to sell them. While it is true that the statute authorizes two separate suits to recover the penalty prescribed for its violation, to be brought by the railroad company discriminated against in such violation and by a person who has offered to purchase a ticket over the line of such company from the company which has violated the statute, yet it is evident,

2

as pointed out by the Court of Appeals, that when the suit is instituted by the person who offered to buy the ticket, he occupies the position of an informer, and brings suit, not to recover any damages which he may have sustained by the refusal to sell him the ticket applied for, but simply as a qui tam action, in vindication of the law, and in furtherance of its purpose to prevent a railroad company from discriminating, even in its own favor, against the line of a connecting carrier. So, while suit may be brought either by the railroad company which has been discriminated against, or by a person who has offered to purchase a ticket over the line of such company from the defendant, or by both, yet unless a petition to recover the prescribed penalty for a refusal by the defendant company to sell the ticket of a connecting carrier shows that in such refusal there has been discrimination, within the meaning of the statute, against the company whose ticket the defendant refused to sell, no cause of action is stated. The statute is not violated by a refusal to put on sale, or a refusal to sell, the tickets of a connecting carrier, unless there has been an antecedent request by such carrier which is denied by the refusal. It is refusal by a railroad company to sell the tickets of a connecting carrier in compliance with the request of such carrier, and not mere refusal to sell such a ticket upon the request of a person offering to purchase the same, which is violative of the statute. The mere allegation that the defendants refused to sell to plaintiff a ticket over the line of the Central of Georgia Railway Company from Augusta to Waynesboro is consistent with inability, without fault, on their part, to sell him such a ticket. In order to state a cause of action, the petition should have shown that it was within the power of the defendants to sell the plaintiff the ticket applied for and they refused to do so, or that their inability to comply with his request was due to their refusal, upon the request of the Central of Georgia Railway Company, to put such tickets on sale. In other words, the petition should have alleged, either that the Central of Georgia Railway Company had placed its tickets, for passage over its line from Augusta to Waynesboro, on sale with the defendant companies' agents, or that it had tendered such tickets to the defendants for sale and they had refused to put them on sale. It follows that the trial court properly sustained the general demurrer.        *Judgment affirmed. All the Justices concur.*