## STEPHENS v. CENTRAL OF GEORGIA RAILWAY CO.

1. A statute which provides a penalty against a common carrier for "refusing to put on sale," or to sell tickets of a connecting carrier for the transportation of passengers over the connecting line, or any portion thereof, at the rate prescribed by the railroad commission of the State, does not violate the provisions of art. 1, sec. 1, par. 3, of the constitution of the State, which declares that no person shall be deprived of property except by due process of law.

(a) Nor is such a statute obnoxious to the fourteenth amendment of the constitution of the United States, which declares that no State shall deprive any person of property without due process of law, nor deny to any person the equal protection of the laws.

(b) Nor does such a statute violate the provision of the constitutions above referred to because it interferes with and destroys the right of private contract.

(c) Nor because it compels a railroad company to become the debtor of another railroad company against its consent.

(d) Nor because it compels a railroad company to become the agent of another railroad company, or to appoint another railroad company its agent, against its consent.

(e) Nor because it deprives a railroad company of the right to select its own agents, and compels it, against its consent, to transact its business through the agents of another railroad company.

(f) Nor for the reason that it requires a railroad company to enter into contractual relations with another railroad company against its consent.

2. Where a connecting line of railroad having an office or agency has on sale tickets furnished by another connecting railroad for the transportation of passengers over the latter, and refuses to sell said tickets to a prospective passenger who applies to the agent of the initial carrier for such tickets at the price fixed by the railroad commission of this State, the railroad so refusing is subject to the penalty provided by the Civil Code, § 2755.

3. The petition, as amended, set forth a good cause of action, and the demurrer thereto should have been overruled.

　　　JULY 11, 1912. REHEARING DENIED SEPTEMBER 18, 1912.

Action for penalty. Before Judge Freeman. Carroll superior court. November 20, 1911.

*Watkins & Latimer* and *S. Holderness,* for plaintiff.

*Hall & Cleveland, Hall & Hall* and *R. D. Jackson,* for defendant.

HILL, J. Stephens brought his action against the Central of Georgia Railway Company to recover the penalty provided in the Civil Code, §§ 2752 to 2755, inclusive. The petition, as amended, shows substantially the following: The defendant company is a common carrier operating passenger-trains from Whitesburg, Carroll county, Ga., to and beyond Newnan, Coweta county, and

40

the defendant is directly and indirectly connected with the Atlanta and West Point Railroad at Newnan, Ga., their tracks crossing there. The most direct route from Whitesburg to Atlanta is over the defendant railway, via Newnan and the Atlanta and West Point Railroad. The rate of fare fixed by the railroad commission from Whitesburg to Newnan is 28¢, and from Newnan to Atlanta 78¢, making a legal passenger charge from Whitesburg to Atlanta of $1.06, as fixed by the railroad commission. The plaintiff demanded of the defendant, on the dates named in the petition, tickets from Whitesburg to Atlanta, over the connecting line of railroad, and the defendant refused to sell such tickets at the lawful rate fixed by the commission, but charged and secured 15 cents in excess of the legal rate. The failure to sell such tickets at the rate fixed by the commission was in violation of the Civil Code, § 2755, and subjected the defendant to the penalty of $1,000 prescribed by that section, for each offense, and suit was brought for $2,000 for the two offenses. It was also alleged that while the defendant refused to put on sale or to sell tickets as aforesaid, it had, at all times since the rate was fixed by the railroad commission on September 2, 1907, sold tickets from Whitesburg to Newnan for 28¢, and the Atlanta and West Point Railroad Company sold tickets from Newnan to Atlanta for 78¢. On and from the above date the defendant was authorized to sell and did sell tickets of the Atlanta and West Point Railroad and its own line from Whitesburg, via Newnan, to Atlanta. Tickets reading from Whitesburg to Atlanta over the lines of the defendant company and the Atlanta and West Point Railroad Company to Newnan and Atlanta had been placed by the latter company with the defendant company at all times since the 2d day of September, 1907, and it was within the power of the defendant company to sell the plaintiff the ticket applied for, over the connecting lines, at the price fixed by the railroad commission. The tickets sold to the plaintiff, reading over such connecting lines of the defendant and the Atlanta and West Point Railroad Company, were received by these companies for passage over their connecting lines; but notwithstanding it was within the power of the defendant to sell tickets on the dates on which the plaintiff sought to buy them from Whitesburg to Atlanta over the connecting lines of the two companies, the defendant refused to sell such tickets, though requested to do so, at the price fixed

by the railroad commission, but sold such tickets at a price and rate in excess of that fixed by the railroad commission of Georgia. The defendant filed its demurrer to the petition, which was sustained by the trial judge, and the petition dismissed. To this judgment the plaintiff excepted and brought the case here for review.

1. This is a suit to recover the penalty provided by the Civil Code, § 2755. The facts are substantially set forth above. The material portions of sections 2753, 2754, and 2755 of the Code are as follows: "No railroad company having an office or agency within the State of Georgia shall refuse to put on sale, or refuse to sell, any ticket of any other railroad company, with which the same may be directly or indirectly connected, at the price or rate fixed by the railroad commission of this State, for passage over lines of such connecting roads, less such amount as may be directed to be deducted from such rate by any one or more of said connecting lines." "No railroad company operating or doing business wholly or partly within this State shall refuse to put on sale with the agents of any other railroad company, wherewith it may be directly or indirectly connected, tickets for any point upon its line of road, or refuse to receive such tickets for passage over its lines, or refuse to receive and transport baggage which may be checked upon tickets so sold." "For every violation of any of the provisions of the two preceding sections, the railroad company shall be subject to a penalty of one thousand dollars, which may be recovered in any superior or city court of the county in which such violation may occur. Suit may be brought by the railroad company whose road may be discriminated against, or by the person offering to buy a ticket over such road; and such penalty may be recovered by each of said parties, and the recovery by one shall not be a bar to the recovery by the other." It is alleged that the defendant company refused to sell tickets of the Atlanta and West Point Railroad Company, its connecting line of railroad, from Newnan to Atlanta, and its own tickets from Whitesburg to Newnan, at the price fixed by the railroad commission of this State, although the defendant had received from the Atlanta and West Point Railroad Company and had on sale and did sell tickets over that line and over its own to the plaintiff at a price in excess of the rate fixed by the railroad commission. There was no question raised as to the form of the tickets had and sold. It is insisted by the defendant in error that the above-recited

statute, on which this suit is founded, is invalid and unconstitutional, because it violates the provisions of art. 1, sec. 1, par. 3, of the constitution of this State (Civil Code, § 6359), which declares that no person shall be deprived of property except by due process of law; and of the fourteenth amendment to the constitution of the United States, which declares that no State shall deprive any person of property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws (Civil Code, § 6700). We think the case, on this point, is controlled by the decision in the case of *Wadley Southern Railway Co.* v. *State,* 137 *Ga.* 497 (3), 504 (73 S. E. 741) ; and therefore no further discussion of it is necessary. See also *Atlantic Coast Line Railroad Co.* v. *State,* 135 *Ga.* 546 (3), 557 (69 S. E. 725, 32 L. R. A. (N. S.) 20).

But it is insisted that even if the act quoted from is not unconstitutional upon the above grounds, it interferes with and destroys the right of private contract with reference to the matters dealt with in said statute, and requires a railroad company to become the debtor of another railroad company and to become its agent against its consent, etc. We do not think these contentions are sound. The right of the legislature to pass laws regulating common carriers has been constantly questioned in this State, but this is no longer an open question. The opinion in the case of *Georgia Railroad Co.* v. *Smith,* 70 *Ga.* 694, and the uniform line of decisions subsequent thereto, are to the effect that the legislature, within its constitutional limitations, has that right. In the *Smith* case, supra, it was ruled: "The object of the constitutional provision conferring power upon the legislature to regulate railroad freights and passenger tariffs, to prevent unjust discrimination and require reasonable and just freights and tariffs, and making it the duty of the legislature to pass laws in furtherance of this provision, was to give proper protection to the citizens against unjust rates for the transportation of freights and passengers over the railroads of the State, and to prevent unjust discrimination, even though the rates might be just." The principle of the right of a State or government to regulate carriers and rates for public services performed is not new, but seems to date back to a very ancient period. So far as the writer's research extends, it goes at least as far back as about 2250 years before the birth of Christ, to the reign of

Hammurabi, the King of ancient Babylon, who had a complete code of laws for that time. Indeed, our laws of the present day have few underlying principles that do not seem to be contained in this primitive code. In it we read, that "If a man be on a journey and he give silver, gold, stones, or portable property to a man with a commission for transportation, and if the man do not deliver that which was to be transported where it was to be transported, but take it to himself, the owner of the transported goods shall call that man to account for the goods to be transported which he did not deliver, and that man shall deliver to the owner of the transported goods five-fold the amount which was given to him." The Code of Hummurabi (2d ed.), University of Chicago Press, 1904, § 112. Again, we read: "If a man hire an ox for a year, he shall give to its owner four Gur of grain as the hire of a draught ox, and three Gur of grain as the hire of an ox." Ib. §§ 242, 243. "If a man hire a sailboat, he shall pay 2½ SE of silver as its hire." Ib. § 276. "If a man hire oxen, a wagon, and a driver, he shall pay 180 KA of grain per day." Ib. § 271. "If a man hire a wagon only, he shall pay 40 KA of grain per day." Ib. § 272. "If he hire an ass to thresh, 10 KA of grain is its hire." Ib. § 269. Numerous other instances from this ancient code could be cited. So the principle of regulation is not new, but has come down to us from the ancients. But we are not remanded to ancient history, or law, for precedent on this question. The constitutional and statutory right to regulate common carriers in this State, within the limitations imposed, is too well settled to require argument or citation of authority. Our reports abound in decisions on the subject of railroad regulation. The question presented for determination is, has the legislature the right to compel one railroad to place its tickets on sale with another connecting railroad and to require, the latter railroad to sell them at the price fixed by the railroad commission? In this case the question does not really come to that; for the defendant railroad had on sale the tickets alleged to have been placed by the railroad connecting with it, and sold them; and the real question is, is the railroad selling the tickets at a greater rate than that prescribed by the railroad commission of Georgia subject to the penalty provided by law for the violation of the statute here sought to be enforced? The penalty is "for every violation of *any* of the provisions of the two preceding

sections." Is the sale of the tickets at a rate in excess of that fixed by the railroad commission a violation of *any* provision of the statute? We think it is. A simple reference to the statute quoted above is sufficient to establish this. If the position of the defendant in error is sound and can be maintained, the whole law regulating common carriers and requiring railroads to connect, interchange freight, to prevent discrimination, to make physical connection, and the like, is wiped out. In some of the cases coming to this court on this and similar questions, the same argument was used as here. In the case of *Atlantic Coast Line Railroad Company* v. *State,* supra, it was argued that the legislature could not, under the police power conferred on it, require a railroad company to furnish a certain kind of headlight; but this court (p. 557) said: "All property is held subject to the police power of the State. The determination by the railroad company that the reflector and the light in use by it constitute an adequate light can not be conclusive on the General Assembly, which has the authority to exercise the police power of the State, and in the interest of public safety to declare such light inadequate. It is a matter of great importance for the protection of persons and property in the train, the persons on the locomotive, persons and property on the track, and persons and property on other trains with which a collision may be had, that there should be an adequate headlight on such locomotive. The General Assembly, in the exercise of the police power of the State, has the right to require adequate headlights on such engines; and if in conformity to the requirements of such law the railroad company is compelled to do away with the headlights already in use by it and substitute others therefor at its own expense, there is no taking of property without just compensation, in violation of the due-process clauses of the State and Federal constitutions. In such a case there is no taking of property. The due-process clauses are not intended to limit the right of the State to properly exercise the police power in the enhancement of the public safety. The fact that the railroad company will, in order to equip its engines with the required headlights, be forced to do away with the reflectors and lights which it has in use is only incidental to a compliance with the police regulation and requirement made in the act, which is a valid and reasonable requirement." In the case of Minneapolis & St. Louis Railroad Co. *v.* Minnesota, 186 U. S. 257

(22 Sup. Ct. 900, 46 L. ed. 1151), it was held: "The act of the legislature of Minnesota, creating a railroad commission, is not unconstitutional in assuming to establish joint through rates or tariffs over the lines of independent connecting railroads, and apportioning and dividing the joint earnings." "Without deciding whether or not connecting roads may be compelled to enter into contracts as between themselves, and establish joint rates, it is none the less true that where a joint tariff between two or more roads has been agreed upon, such tariff is as much within the control of the legislature as if it related to transportation over a single line." See also Beale & Wyman on Railroad Rate Regulation, § 830; *Wadley Southern Ry. Co.* v. *State,* supra. It is true this court has held that a shipper can not require a carrier to issue a through bill of lading—*Coles* v. *Central R. Co.,* 86 *Ga.* 253 (12 S. E. 749) ; *State* v. *Wrightsville &c. R. Co.,* 104 *Ga.* 437 (30 S. E. 891,—not for constitutional reasons, but for lack of statutory legislation on the subject. Our statute requires one railroad company to receive and take cars from another railroad, as well as freight for transportation. Civil Code, § 2756. The argument here against requiring one connecting railroad to furnish and the other to sell passenger tickets is the same that has been held not sound by this court, and others, in the numerous cases on that question. If the contention is sound that a given railroad has the power to contract with one railroad and not with another, and it is held that it can not be required to do so because you force them to contract with one another, the effect would be to obliterate all the law preventing discrimination. We hold, therefore, that the act under review is not void on the ground that it interferes with and destroys the right of private contract with reference to the matters dealt with in the statute; nor on the ground that it requires one railroad company to become the debtor of another railroad company, or to become the agent of another railroad company against its consent.

2   In the case of *Jones* v. *Louisville & Nashville Railroad Co.,* 132 *Ga.* 11 (63 S. E. 627), the plaintiff alleged neither that the "defendant had been furnished tickets of this kind for sale by such connecting carrier, nor that it had been tendered such tickets for sale and had refused to put them on sale;" and hence no cause of action was stated under the statute, and the case was properly dismissed. But here the case is different, and the amendment seems

to have been drawn with special reference to the *Jones* case, supra, and brings this case within the reasoning in that. It is alleged here that the Central of Georgia Railway Company was furnished the tickets by the Atlanta and West Point Railroad Company, its connection, and, having the tickets, refused to sell them to the plaintiff at the rate prescribed by the railroad commission, but sold them at a price or rate in excess of that fixed by the railroad commission, and that these tickets were accepted by the two railroad companies respectively. This case, therefore, comes clearly within the reasoning in the *Jones* case, supra. We hold that when one railroad places its tickets with another railroad which has an office or agency and physical connection with the former, this is substantially a request to sell such tickets. And if the carrier having them for sale refuses to sell them at the rate fixed by the railroad commission of this State, this constitutes a discrimination within the purview of the statute, and the carrier so refusing violates the sections of the Civil Code first above cited, and is liable for the penalty provided by that statute.

3. The learned judge in sustaining the demurrer did not state the ground of his decision; hence we look with special care to each ground, and in doing so conclude that the petition, as amended, set forth a good cause of action, and that the demurrer both on the general and the special grounds should have been overruled.

*Judgment reversed. All the Justices concur.*